ACCEPTED
13-15-00013-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
8/24/2015 8:12:32 PM
CECILE FOY GSANGER
CLERK

No. 13-15-13-CV

_____

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/24/2015 8:12:32 PM
CECILE FOY GSANGER
Clerk

In the Thirteenth Court of Appeals
Corpus Christi, Texas

_____

Crimson Exploration Inc.; Kerr-McGee Oil & Gas Onshore LP; Westport Oil & Gas Company; Crimson Exploration Operating Inc. (successor by merger to Southern G. Holdings LLC); Anadarko Petroleum Corporation; Anadarko E&P Company LP; Exco Resources Inc.; and Aubris Resources f/k/a United Resources LP,
Appellants,

v.

Magnum Producing LP,
Appellee.

_____

**BRIEF OF APPELLANTS**

_____

James G. Munisteri
Texas Bar No. 14667380
Stacy R. Obenhaus
Texas Bar No. 15161570
John MacVane
Texas Bar No. 24085444
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002
Tel:   713.276.5500
Fax:   713.276.5555
jmunisteri@gardere.com
sobenhaus@gardere.com
jmacvane@gardere.com

David M. Gunn
Texas Bar No. 08621600
Erin H. Huber
Texas Bar No. 24046118
Beck Redden
1221 McKinney, Suite 4500
Houston, Texas 77010
Tel:  713.951.6278
Fax:  713.951.3720
dgunn@beckredden.com
ehuber@beckredden.com

COUNSEL FOR
DEFENDANTS-APPELLANTS

**Oral argument requested**

## Identity of Parties and Counsel

**Defendants/Appellants:**                    **Counsel:**

Crimson Exploration Inc.                       James G. Munisteri
Kerr-McGee Oil & Gas Onshore LP                Stacy R. Obenhaus
Westport Oil & Gas Company                     John MacVane
Crimson Exploration Operating Inc.             Gardere Wynne Sewell LLP
    (successor by merger to Southern    1000 Louisiana, Suite 2000
    G. Holdings LLC)                      Houston, Texas 77002
Anadarko Petroleum Corporation
Anadarko E&P Company LP                        David M. Gunn
Exco Resources Inc.                            Erin H. Huber
Aubris Resources f/k/a United                  Beck Redden
    Resources LP                          1221 McKinney St., Suite 4500
                                               Houston, Texas 77010
                                               [Crimson parties only]

                                               Marcus F. Schwartz
                                               Schwartz & Schwartz
                                               P. O. Box 385
                                               Hallettsville, Texas 77964

**Plaintiff/Appellee:**                        **Counsel:**

Magnum Producing LP                            James T. Clancy
                                               Clinton W. Twaddell, III
                                               Branscomb PC
                                               802 N. Carancahua, Suite 1900
                                               Corpus Christi, Texas 78401-0036

                                               Frank Weathered
                                               Dunn Weathered Coffey Rivera &
                                                   Kasperitis PC
                                               611 S. Upper Broadway
                                               Corpus Christi, Texas 78401

# Table of Contents

Identity of Parties and Counsel...............................................................................i

Table of Contents ................................................................................................ ii

Index of Authorities........................................................................................... vi

Statement of the Case ...................................................................................... xiv

Statement Regarding Oral Argument................................................................ xv

Issues Presented ............................................................................................... xvi

Statement of Facts ...............................................................................................1

I.   Before The Events At Issue, The Simpson Lease Terminated....................1

II.  Uncertain About The Simpson Lease's Validity, Magnum And
     Others  Signed Contracts To Secure Their  Claimed Interests...................1

III. Despite These Contracts, Rights Under The Simpson Lease—
     Including Magnum's Rights—Remained Uncertain.................................6

IV.  Crimson Disputed Magnum's Interest, and Magnum Filed Suit...........10

Summary of Argument ......................................................................................13

Standard of Review...........................................................................................18

Argument ..........................................................................................................19

I.   The Trial Court Erred In Awarding Magnum Real Property
     Interests Absent Proof of an Assignment [Issue 1]...................................19

     A.   Oil and gas working interests and overriding royalties
          constitute  real  property  interests  transferred  by
          conveyance—i.e., by a deed..............................................................19

     B.   Magnum sued on a contract, not a conveyance or deed.................20

        1. The SMSA and JOA are contracts, not deeds or conveyances. ..........21

    2. The LOI is a contract, not a deed or conveyance.................................22

    C.    The judgment could not properly award Magnum a working interest or overriding royalties—or stipulated damages and fees. ...................................................................................................26

II.  This Court Should Reverse The Trial Court's Judgment And Render Judgment That Magnum Take Nothing. ........................................27

    A.    Magnum cannot recover for breach of contract in the alternative. ...............................................................................................27

    1. The LOI is an unenforceable agreement to agree: the LOI omits essential terms of a binding contract [Issue 2].........................................28

    2. Limitations bars suit for damages and specific performance of the LOI's obligation to convey interests [Issue 3]. ...................................31

    3. The SMSA imposed no obligations to assign Zalman leases [Issue 4]...............................................................................................39

    4. The JOA imposed no obligations to assign Zalman leases [Issue 4]...............................................................................................41

    B.    Magnum did not prove rights in the 2008 Zalman lease. ...............41

    C.    Magnum did not prove rights in the 2006 Zalman lease. ...............42

    D.    Magnum cannot recover in the alternative based on other claims pleaded, because the claims were dismissed without objection. ...............................................................................................43

    E.    The trial court should have granted the operators' summary judgment motion—and therefore this Court must do so................44

    1. Judgment may be granted on a cross-motion for summary judgment.............................................................................................44

    2. The operators are entitled to judgment for title to the working interests............................................................................................45

    3. Magnum could not recover the overriding royalty interests, either.................................................................................................46

4. The operators are entitled to judgment on all other claims asserted. ..................................................................................46

III. Even If Magnum Had Assignments Of The Lease Interests At Issue, The Judgment Should Be Reversed [Issue 3]...................47

    A.    The trial court erred in granting Magnum any relief, because Magnum's summary judgment motion requested none [Issue 3]. ....................................................................................47

    1. A summary judgment motion must specifically, expressly present the grounds for summary judgment—including any relief granted...................................................................................48

    2. Magnum's motion did not specifically, expressly request an award of a working interest—a trespass-to-try-title remedy.................49

    3. Magnum's motion did not specifically, expressly request declaratory relief regarding the overriding royalty interests.................51

    B.    The trial court's ruling was harmful..................................................52

IV. Alternatively, Remand Is The Only Proper Relief. ....................53

    A.    Remand to determine fact issues regarding limitations issue........54

    B.    Remand to resolve ambiguity in the LOI. ..........................................54

    C.    Remand to resolve issues regarding proper scope of relief............56

V. Only A Modified Judgment Could Ever Be Proper [Issue 5]...................57

    A.    Judgment for Magnum could only involve an award of damages and attorneys' fees for breach of contract.........................57

    B.    Judgment for declaratory relief should be substantially modified..........................................................................................58

Prayer .......................................................................................63

Certification.............................................................................65

Certificate of Service .............................................................65

Appendix A:     Order on Motions for Summary Judgment (Oct. 22, 2013)

Appendix B:     Partial Judgment (Apr. 9, 2014)

Appendix C:     Order Granting Plaintiff's Motion to Correct Clerical Error Nunc Pro Tunc

Appendix D:     Supplemental Summary Judgment Order (Oct. 22, 2014)

Appendix E:     Final Judgment (Nov. 24, 2014)

Appendix F:     Master Settlement Agreement Exhibit A (plat)

Appendix G:     Amanda De La Croix plat

Appendix H:     Joint Operating Agreement art. VIII, § B

Appendix I:     Letter of Intent Oct. 8, 2013

Appendix J:     Zalman well operators chart

Appendix K:     Timeline

Appendix L:     Glossary of oil and gas law terms

# Index of Authorities

**Page(s)**

CASES

*Adams v. Cannan*,
    253 S.W.2d 948 (Tex. Civ. App.—San Antonio 1952, writ ref'd
    n.r.e.) ..................................................................................................40

*AGD LP v. Quest Principal Inves. Inc.*,
    No. 13-12-720-CV, 2014 WL 6602314 (Tex. App.—Corpus Christi
    Nov. 20, 2014, no pet) .......................................................................44

*Alford v. Krum*,
    671 S.W.2d 870 (Tex. 1984)..............................................................58

*Am. Tobacco Co. v. Grinnell*,
    951 S.W.2d 420 (Tex. 1997)..............................................................18

*Amber Oil & Gas Co. v. Bratton*,
    711 S.W.2d 741 (Tex. App.—Austin 1986, no writ)....................40

*Amedisys Inc. v. Kingwood Home Health Care LLC*,
    437 S.W.3d 507 (Tex. 2014)..............................................................54

*Bachler v. Rosenthal*,
    798 S.W.2d 646 (Tex. App.—Austin 1990, writ denied)............40

*Bailey v. Williamson*,
    129 S.W.2d 1162 (Tex. Civ. App.—El Paso 1939, no writ) ........37

*Barber v. Colorado ISD*,
    901 S.W.2d 447 (Tex. 1995)..............................................................35

*Barker v. Eckman*,
    213 S.W.3d 306 (Tex. 2006)........................................................32, 38

*Borderlon v. Peck*,
    661 S.W.2d 907 (Tex. 1983)..............................................................38

*Bowman v. Lumberton ISD,*
    801 S.W.2d 883 (Tex. 1990) ................................................................48

*BP Am. Prod. v. Marshall,*
    342 S.W.3d 59 (Tex. 2011) ..................................................................38

*Cartwright v. Cologne Production Co.,*
    182 S.W.3d 438 (Tex. App.—Corpus Christi 2006, pet. denied) ..............48

*Cheek v. Metzer,*
    116 Tex. 356, 291 S.W. 860 (1927) ......................................................35

*Chesapeake Operating Inc. v. Denson,*
    201 S.W.3d 369 (Tex. App.—Amarillo 2006, pet. denied) ........................61

*City of Fort Worth v. Johnson,*
    388 S.W.2d 400 (Tex. 1964) ................................................................52

*Consumer Portfolio Servs. Inc. v. Obregon,*
    No. 13-09-548-CV, 2010 WL 4361765 (Tex. App.—Corpus Christi
    Nov. 4, 2010, no pet.) ......................................................................48

*Cont'l Royalty Co. v. Marshall,*
    239 S.W.2d 837 (Tex. Civ. App.—Texarkana 1951, no writ) ....................24

*Creditwatch, Inc. v. Jackson,*
    157 S.W.3d 814 (Tex. 2005) ................................................................18

*Currie v. Burgess,*
    132 Tex. 104, 120 S.W.2d 788 (1938) ..................................................24

*De Benavides v. Warren,*
    674 S.W.2d 353 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) ............53

*Dow Chem. Co. v. Bright,*
    89 S.W.3d 602 (Tex. 2002) ................................................................44

*El Paso Field Servs., L.P. v. Mastec N. Am., Inc.,*
    389 S.W.3d 802 (Tex. 2012) ................................................................28

vii

*Exploration Co. v. Vega Oil & Gas Co.*,
  843 S.W.2d 123 (Tex. App.—Houston [14th Dist.] 1992, writ
  denied) ......................................................................................41

*Exxon Corp. v. Emerald Oil & Gas Co.*,
  348 S.W.3d 194 (Tex. 2011).......................................................39

*FM Props. Operating Co. v. City of Austin*,
  22 S.W.3d 868 (Tex. 2000)..........................................................44

*Fortis Benefits v. Cantu*,
  234 S.W.3d 642 (Tex. 2007).........................................................27

*Frost Nat'l Bank v. L & F Distribs., Ltd.*,
  165 S.W.3d 310 (Tex. 2005)....................................................27, 28

*George v. Vick*,
  686 S.W.2d 99 (Tex. 1984).......................................................44, 58

*Getty Oil Co. v. Blevco Energy Inc.*,
  722 S.W.2d 51 (Tex. App.—Eastland 1986), *writ dism'd*, 770 S.W.2d
  569 (Tex. 1989) .........................................................................28, 29

*Gordon v. W. Houston Trees Ltd.*,
  352 S.W.3d 32 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ..................20

*Green v. Canon*,
  33 S.W.3d 855 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)........20

*Hagar v. Martin*,
  277 S.W.2d 195 (Tex. Civ. App.—Dallas 1955, writ ref'd n.r.e.) ...............40

*Halbert v. Green*,
  156 Tex. 223, 293 S.W.2d 848 (1956).............................................45

*Harlan v. Vetter*,
  732 S.W.2d 390 (Tex. App.—Eastland 1987, writ ref'd n.r.e.)....................20

*Hoover v. Gregory*,
  835 S.W.2d 668 (Tex. App.—Dallas 1992, writ denied).............................32

*Hunt v. Heaton,*
643 S.W.2d 677 (Tex. 1982).................................................................45

*Hurbrough v. Cain,*
571 S.W.2d 216 (Tex. Civ. App.—Tyler 1978, no pet.).........................35, 37

*Jay Petroleum LLC v. EOG Res. Inc.,*
332 S.W.3d 534 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ...............56

*Kennedy Con. Inc. v. Forman,*
316 S.W.3d 129 (Tex. App.—Houston [14th Dist.] 2010, no pet.) .............50

*Kerlin v. Sauceda,*
263 S.W.3d 920 (Tex. 2008)..................................................................38

*Knapp Med. Ctr. v. Grass,*
443 S.W.3d 182 (Tex. App.—Corpus Christi 2013, pet. denied) ...............18

*Land v. Turner,*
377 S.W.2d 181 (Tex. 1964)..................................................................50

*Lehmann v. Har-Con Corp.,*
39 S.W.3d 191 (Tex. 2001)...............................................................44, 57

*Li Li v. 1821 W. Main Dev. LLC,*
No. 14-10-1227-CV, 2011 WL 5926679 (Tex. App.—Houston [14th
Dist.] Nov. 29, 2011, pet. denied).........................................................25

*Lile v. Smith,*
291 S.W.3d 75 (Tex. App.—Texarkana 2009, no pet.)..............................50

*Marifarms Oil & Gas, Inc. v. Westhoff,*
802 S.W.2d 123 (Tex. App.—Fort Worth 1991, no writ)...........................40

*Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.,*
223 S.W.3d 1 (Tex. App.—El Paso 2005, pet. denied)..............................62

*Martin v. Amerman,*
133 S.W.2d 262 (Tex. 2004)..................................................................56

*Martin v. McDonnold*,
  247 S.W.3d 224 (Tex. App.—El Paso 2006, no pet.)....................................50

*Masgas v. Anderson*,
  310 S.W.3d 567 (Tex. App.—Eastland 2010, pet. denied) ........................45

*Matagorda Cty. Appraisal Dist. v. Coastal Liquids Partners LP*,
  165 S.W.3d 329 (Tex. 2005)....................................................................19, 49

*Mattox v. Cnty. Comm'rs Ct.*,
  389 S.W.3d 464 (Tex. App.—Houston [14th Dist.] 2012, pet.
  denied) ....................................................................................................49

*Mays v. Pierce*,
  203 S.W.3d 564 (Tex. App.—Houston [14th Dist.] 2006, pet.
  denied) ....................................................................................................32

*McConnell v. Southside ISD*,
  858 S.W.2d 337 (Tex. 1993).............................................17, 18, 48, 58

*McCormick v. Krueger*,
  593 S.W.2d 729 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ
  ref'd n.r.e.) .............................................................................................41

*MCT Energy Ltd. v. Collins*,
  No. 07-13-304-CV, 2014 WL 5422918 (Tex. App.—Amarillo Oct. 21,
  2014, no pet.) ......................................................................................50, 52

*MGM Fin. Corp. v. Woodlands Operating Co.*,
  292 S.W.3d 660 (Tex. 2009)..............................................................56

*Moore v. Dilworth*,
  142 Tex. 538, 179 S.W.2d 940 (1944)..............................................35

*Pearcy v. Envtl. Conservancy of Austin & Cent. Tex. Inc.*,
  814 S.W.2d 243 (Tex. App.—Austin 1991, writ denied)............................35

*Petro Pro, Ltd. v. Upland Res., Inc.*,
  279 S.W.3d 743 (Tex. App.—Amarillo 2007, no pet.)................................58

*Plainsman Trading Co. v. Crews*,
   898 S.W.2d 786 (Tex. 1995)....................................................................58

*Positive Feed, Inc. v. Guthmann*,
   4 S.W.3d 879 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ...................52

*Quicksilver Res., Inc. v. CMS Mktg. Servs. & Trading Co.*,
   No. 02-03-251-CV, 2005 WL 182951 (Tex. App.—Fort Worth Jan.
   27, 2005, pet. denied) ...........................................................................49

*Reilly v. Rangers Mgmt., Inc.*,
   727 S.W.2d 527 (Tex. 1987)....................................................................54

*Richardson v. Allstate Tex. Lloyd's*,
   72 S.W.3d 779 (Tex. App.—Dallas 2007, no pet.) ......................................49

*Rogers v. Ricane Enters. Inc.*,
   884 S.W.2d 763 (Tex. 1994)....................................................................49

*Samano v. Sun Oil Co.*,
   621 S.W.2d 580 (Tex. 1981)....................................................................40

*Seureau v. ExxonMobil Corp.*,
   274 S.W.3d 206 (Tex. App.—Houston [14th Dist.] 2008, no pet.) .............39

*Shell Oil Co. v. Ross*,
   356 S.W.3d 924 (Tex. 2011)....................................................................38

*Simpson v. Curtis*,
   351 S.W.3d 374 (Tex. App.—Tyler 2010, no pet.) ......................................61

*Smith v. Davis*,
   No. 12–12–00169–CV, 2013 WL 2424266 (Tex. App.—Tyler June 5,
   2013, no pet.) ...............................................................................19, 31

*Smith v. Sabine Royalty Corp.*,
   556 S.W.2d 365 (Tex. Civ. App.—Amarillo 1977, no writ) ............30, 31, 35

*S. Plans Switching Ltd. v. BNSF Railway Co.*,
   255 S.W.3d 690 (Tex. App.—Amarillo 2008, pet. denied)..........................33

*Stephens Cnty. Museum, Inc. v. Swenson*,
517 S.W.2d 257 (Tex. 1974)....................................................................20

*Stine v. Stewart*,
80 S.W.3d 586 (Tex. 2002).....................................................................32

*Stroud Prod. LLC v. Hosford*,
405 S.W.3d 794 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ........19

*Sunac Petroleum Corp. v. Parkes*,
416 S.W.2d 798 (Tex. 1967)...................................................................41

*Sw. Guar. Trust Co. v. Hardy Rd. 13.4 Joint Venture*,
981 S.W.2d 951 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ........52

*T.O. Stanley Boot Co. v. Bank of El Paso*,
847 S.W.2d 218 (Tex. 1992)...................................................................31

*Tex. Parks & Wildlife Dep't v. Sawyer Trust*,
354 S.W.3d 384 (Tex. 2011)...................................................................49

*Travis v. City of Mesquite*,
830 S.W.2d 94 (Tex. 1992).....................................................................48

*Universal C.I.T. Credit Corp. v. Daniel*,
243 S.W.2d 154 (Tex. 1951)...................................................................54

*Wagner & Brown, Ltd. v. Horwood*,
58 S.W.3d 732 (Tex. 2001).....................................................................38

*Walker v. Kleiman*,
896 S.W.2d 413 (Tex. App.—Houston [1st Dist.] 1995, no writ) ..............25

*White v. Moore*,
760 S.W.2d 242 (Tex. 1988)...................................................................54

*Willy v. Winkler*,
No. 01-10-115-CV, 2010 WL 5187719 (Tex. App.—Houston [1st
Dist.] Dec. 23, 2010, no pet.)................................................................49

*Wolfe v. Devon Energy Prod. Co.*,
  382 S.W.3d 434 (Tex. App.—Waco 2012, pet. denied)................................52

*Young Refining Corp. v. Pennzoil Co.*,
  46 S.W.3d 380
  (Tex. App.—Houston [1st Dist.] 2001, pet. denied)........................29, 30, 62

**STATUTES**

Tex. Prop. Code Ann. Ch. 22 ................................................................49, 50

Tex. Civ. Prac. & Rem. Code § 16.004 ........................................................32

Tex. Civ. Prac. & Rem. Code § 16.051 ........................................................32

Tex. Civ. Prac. & Rem. Code § 37.004 ........................................................49

**OTHER AUTHORITIES**

Tex. R. App. P. 9.4 ......................................................................................56

Tex. R. App. P. 43.2 ...............................................................45, 46, 55, 58

Tex. R. App. P. 43.3 ..........................................................................27, 53

Tex. R. App. P. 43.4 ....................................................................................63

Tex. R. App. P. 44.1 ....................................................................................52

Tex. R. Civ. P. 11......................................................12, 26, 27, 43, 57

Tex. R. Civ. P. 131......................................................................................63

Tex. R. Civ. P. 166a............................................... 17, 18, 50, 51, 52, 58

Tex. R. Civ. P. 279......................................................................................58

Tex. R. Civ. P. 783-809 ..............................................................................53

## Statement of the Case

**Nature of the case:** Lawsuit for damages, declaratory judgment, and specific performance of a letter of intent requiring the operators of oil and gas wells to assign the plaintiff overriding royalty interests and working interests in oil and gas leases.

**Course of proceedings:** The parties filed cross-motions for summary judgment addressing liability. The trial court granted plaintiff Magnum's motion, rendering an interlocutory summary judgment awarding Magnum interests in the leases (but awarding Magnum nothing from two defendants).

Partial judgment awarding Magnum damages and attorneys' fees was later signed based on the parties' Rule 11 stipulation on those issues.

**Trial court disposition:** Final judgment awarding Magnum overriding royalty interests and working interests in the leases at issue; awarding it actual damages of $4,755,699 for three of the operators' failure to pay royalties; awarding Magnum its attorneys' fees; denying Magnum prejudgment interest; and ruling that Magnum take nothing from the remaining defendants.

## Statement Regarding Oral Argument

Oral argument would assist the Court. The case involves complicated facts regarding oil and gas leases, related agreements, percentage interests in the leases, title issues, and the history of lease ownership. The case also involves an unusual procedural history in the trial court below.

## Issues Presented

The broad issue is whether the trial court erred in granting summary judgment for Magnum and denying summary judgment to the operators. This issue encompasses these sub-issues:

1. *Contract vs. conveyance*: Did the court err in awarding Magnum real property interests when Magnum only claimed a contract to convey the interests but neither claimed nor proved an actual conveyance?

2. *Enforceability:* Does the language of the operative contract—a letter of intent that provides for entering into "further agreements" in the future—contain all essential terms needed to make it enforceable?

3. *Statute of limitations*: Did Magnum wait too long to sue?

4. *Interpretation*: Do the other contracts give Magnum rights?

5. *Procedure*:

   (a) Did the court err in granting relief not expressly presented in Magnum's summary judgment motion?

   (b) Are the operators entitled to summary judgment providing that Magnum take nothing, or is remand needed to resolve fact issues?

   (c) If Magnum was entitled to relief, did the trial court err by misconstruing the parties' rights under the agreements and leases, and is remand needed to resolve damages issues?

**Statement of Facts**

I.     **BEFORE THE EVENTS AT ISSUE, THE SIMPSON LEASE TERMINATED.**

In 1956 some Simpson family members executed an oil and gas lease, the so-called "Simpson lease," leasing mineral interests in Lavaca County, Texas (CR 2671-76). Over the next several years, gas wells were drilled on lands that the lease covered and gas was produced (CR 2717-36). However, there were two periods of no production, when **shut-in royalties** were not paid properly: April-May 1979 and May-October 1989 (CR 1507-11, 1522-26, 1538). Lawsuits were filed regarding the lease's validity (CR 1210-12). In 2006 the trial court ruled—in *Castle Oil & Gas Limited Partnership v. Kent Circle Investments*—that on or before January 1, 1996, the Simpson lease had expired (CR 657-58). In 2007, an appeal of that matter was dismissed by this Court based on a settlement (CR 2234-39).

II.    **UNCERTAIN ABOUT THE SIMPSON LEASE'S VALIDITY, MAGNUM AND OTHERS SIGNED CONTRACTS TO SECURE THEIR CLAIMED INTERESTS.**

Years before that ruling, however, several parties had settled unrelated litigation regarding the Simpson lease. Specifically, Magnum Producing LP signed a Supplemental Master Settlement Agreement ("SMSA") (which superseded an earlier Master Settlement Agreement ("MSA")) with other claimants who, while not disputing the Simpson

lease's validity, disputed their respective interests under assignments and agreements regarding Simpson lease lands [App. F, G] (CR 805-985, 987-1191). Magnum claimed interests in half of the Simpson lease's working interest (CR 2662-63).

The SMSA's terms addressed the disputes in various ways, including by obligating the parties to execute cross-assignments and abide by a joint operating agreement—the JOA. The SMSA obligated the well operator to assign Magnum a 1% **overriding royalty interest** and a 26.25% **working interest** after payout in the Simpson lease and in various other leases (CR 997-98, 1006-07, 1011, 1114-30, 1134-38). Excluded from the exchange was the "Magnum Reserved Zone" (a.k.a. the "N & O Sands"), a specified depth of oil-bearing sands in which Magnum claimed a working interest through the Simpson lease (CR 993, 997, 1454, 2662-63, 2813-14). The SMSA allowed the operator to drill a well on the Simpson lease lands and assign Magnum the "deep rights" below the well's productive zone (CR 1007).

United Oil & Minerals was the operator of Simpson lease wells at the time and signed the SMSA (CR 1018, CR 2444). To hedge against the possible invalidity of the Simpson lease, that same year United also signed a "top lease"—a lease subject to the existing lease—covering some of the

same Simpson lease acreage. This was the so-called <u>2001 Zalman lease</u> (CR 2663, 2699-2716). Later that year, United completed a well on the acreage—the <u>Zalman No. 3</u> well—and began producing gas from a depth of 12,736 to 12,746 feet (CR 2717-19). Under a "horizontal severance" clause, this 2001 Zalman lease later terminated as to depths below 12,846 feet, so United signed another "top lease" on the same acreage—the <u>2003 Zalman lease</u>—as to depths *below* 12,920 feet (CR 2664, 2704, 2737-46).

Uncertainty about the Simpson lease's validity arose as early as 1997 and continued thereafter (1SCR 342-47, 378-79). Magnum claimed interests in the Simpson lease through assignment from Samedan Oil Corporation, but knew about the uncertainty (CR 157-62, 200). Indeed, in the SMSA the parties had expressly disclaimed warranties of the validity of the leases at issue, including the Simpson lease (CR 1725).

However, United wanted to complete wells on the property in depths covered by the "deep rights" released under the 2001 Zalman lease and reacquired with the 2003 Zalman lease (i.e., the depths *below* 12,920 feet). Therefore, in October 2003 United sent Magnum a proposal. United's proposal noted the continuing litigation over the Simpson lease and the need to clear title to the "deep rights," United proposed to assign Magnum

3

interests in United's new top leases in exchange for Magnum releasing the Simpson lease deep rights (CR 1290-91). Magnum made United a counterproposal in a letter of intent—the LOI—and the parties signed it that month (CR 1295-96) [Appendix I].

United made two basic promises in the LOI: (a) regarding the new top leases, United promised to assign Magnum a 1% overriding royalty interest convertible to a 26.25% working interest after payout (proportionately reduced by 31.5% as to specified tracts and by 50% in other tracts), and (b) United promised to treat the 2001 Zalman lease and subsequent top leases on the acreage as valid "renewals" or "extensions" of the Simpson lease under the MSA, so that as to those leases United would assign Magnum the same interests "otherwise credited it under" the MSA: a 1% overriding royalty interest and 26.25% "back-in" working interest (CR 1295-96). In exchange, Magnum agreed to (a) **farm out** to United the "deep rights" under United's new top leases (and the Simpson lease, if valid), and (b) extend the SMSA's deadline for United to assign the "deep rights" to Magnum (CR 1295-96).

Magnum's theory of the case focuses on the LOI (CR 2813-14). The LOI says that its "guiding purpose" was for United "to assign to Magnum

4

interests in the leases" (CR 1296). *But United never assigned anything*. United never assigned "deep rights" in the new top leases or shallower rights in the 2001 Zalman lease (CR 1356-58, 1362, 1461-62).

Magnum never followed up with United—and never farmed out as the LOI required. Magnum is a sophisticated oil and gas company with interests in around 200 wells and knew how to obtain assignments (CR 1353-56). Instead Magnum slept on its rights. Magnum's president, Avinash Ahuja, thought that the LOI imposed on United an obligation to execute an assignment, yet he never demanded an assignment because he "thought we will be paid contractually" (CR 1470, 1476). He said that he *expected* to receive an assignment "immediately after" execution of the LOI or "[a]t any time," but he "just thought they'll get to it when they get to it" (CR 690, 1477-78). Ahuja also said Magnum typically does not even record such deals in the deed records (CR 1476).

The parties even exchanged drafts of a proposed Magnum farmout agreement pursuant to the LOI (CR 707-26, 759-62), but years passed, and United assigned nothing (CR 1357-59, 1362, 1461, 2137). Throughout this time period, Magnum admittedly did "very little" to analyze title regarding its supposed Zalman well interests (CR 1355).

5

United eventually assigned its interests as the operator in the Zalman leases, and during the next several years the operator of the wells on the lease acreage changed several more times (CR 2442-49). In 2004, operator Westport Oil & Gas completed another gas well—the <u>Zalman No. 4</u> well— this time in the "deep rights" zone, and the Zalman No. 4 well began producing (CR 2728-34). When the <u>Zalman No. 3 well</u> ceased producing in 2006, the next operator acquired yet another lease on that acreage—the <u>2006 Zalman lease</u>, also at issue in this lawsuit (CR 2724-25, 2775-86). Defendant Crimson Exploration Operating Inc. acquired its interest in 2007 and is currently the operator on lands the Zalman leases cover (to the extent those leases have vested) (CR 2448-49, 2814).

[A timeline of the above events, and a chart of the succession of well operators, is contained in Appendices J and K hereto. Appendix L contains a glossary of the oil and gas terms in **bold**.]

### III. DESPITE THESE CONTRACTS, RIGHTS UNDER THE SIMPSON LEASE—INCLUDING MAGNUM'S RIGHTS—REMAINED UNCERTAIN.

In the years after the LOI was signed, no court definitively ruled on the Simpson lease's validity. As a result, in order to continue operations on

the leased acreage, the operators had little choice but to treat various claimants as having possibly valid interests in the Zalman wells.

The Zalman No. 3 well paid out in 2004, but due to pending litigation over the validity of the Simpson lease, the operator had held production revenues in suspense (CR 1323). When the well required a "workover" operation in late 2005, the operator (Westport Oil & Gas) had to determine which working interest owners would participate: it assumed Magnum had an overriding royalty interest through the SMSA, so Westport Oil & Gas asked Magnum to elect whether to convert its interest to a working interest and whether to participate in the workover by executing a standard AFE or "authorization for expenditure" (CR 1323-24). Magnum elected both (CR 1324-25). In doing so, it knowingly accepted a working interest equal to only *half* what the trial court ultimately awarded Magnum in this lawsuit (*compare* CR 1325 *with* CR 3349).

In 2006 the operator (KerrMcGee) proposed to "recomplete" the well at a new depth (it was eventually recompleted in the Magnum Reserved Zone (CR 2735)). KerrMcGee asked Magnum to execute an AFE for that purpose (CR 2002). This AFE noted that the Simpson lease's validity remained in litigation, and so the operator would merely "assume" that

7

Magnum and other claimants "have the potential to have an interest in the well" (CR 2002). Magnum elected to participate, even though the AFE it executed only credited Magnum with half of the percentage interest Magnum claims through the LOI (CR 2001, 2662-63, 2907-13).

For years the successive operators were each uncertain what percentage Simpson lease interests (if any) were owned by Magnum or others (CR 2033-46, 2056-61). Thus, current operator (Crimson) had no title opinion prepared regarding the Magnum Reserved Zone until August 2008, relying instead on payment information inherited from prior operators (CR 2079-80, 2135). But the operators nevertheless continued to bill Magnum (and other claimants) anyway for workover costs (CR 2005-07).

That the operators were unsure about Magnum's possible interest is no surprise, given the uncertainty regarding the Simpson lease's validity—an uncertainty Magnum acknowledges (CR 1691). In fact, not until 2008 did Magnum itself assert that it was not being paid properly (CR 2094). Moreover, the operators had little time to independently review title issues because control of the Zalman lease operations changed hands frequently from the time that United transferred them in 2003 until Crimson acquired

8

them in 2007 (CR 2444). At least one operator had no time to create electronic records of land files before the successor operator had acquired the interests, and some paper records had been stored off site (CR 2078). As one operator's employee later explained it, "we just pulled old Kerr-McGee records and disbursed based on what we found . . . we used a spreadsheet out of Kerr-McGee's old system" and relied on a title opinion issued years earlier to another working interest owner (CR 2079-80). Even Crimson, when it acquired properties in 2007, typically did nothing more than download its predecessor's records (CR 2136). The uncertainty was so acute that in 2009 even Magnum had to rely on "reasonable assumptions" to calculate what it claimed it was owed under the Simpson lease (CR 2099).

When Crimson acquired its interests in the two Zalman wells in 2007, Crimson performed due diligence that did not uncover any recorded interest of Magnum in those wells (CR 125). Not until March 2009 did Magnum even file the LOI in the county land records—*as a contract* (CR 743-50). In a March 19, 2009 letter to Crimson, Magnum asserted it had been underpaid for its interests in the Zalman No. 3 and Zalman No. 4 wells (CR 2097-99).

At that point, Crimson more thoroughly analyzed the title issues for the wells (instead of using predecessors' records) (CR 2136). Because its predecessor in the Zalman well properties did not update its joint interest billing statements, Crimson updated old title opinions and did research to unravel the title confusion (CR 2133-36, 2240-41). That updated title research concluded that Crimson and the prior operators owed Magnum nothing for production from the wells (CR 2115, 2133-38, 2799).

## IV. CRIMSON DISPUTED MAGNUM'S INTEREST, AND MAGNUM FILED SUIT.

Crimson and Magnum had met to discuss the issue in 2010, but Magnum could not identify a single assignment it had of any interest in those wells (CR 2137-38). So instead, Magnum sued Crimson and the prior operators to enforce its "contractual rights" in production from the wells (CR 6-8; 1SCR 5). Magnum sued on November 16, 2010, for conversion and breach of contract and sought damages, attorneys' fees, interest, and costs (CR 7).

The parties filed cross-motions for summary judgment. Magnum filed a summary judgment motion asserting an interest in production from the wells and seeking a ruling that it had "contractual rights" in the Zalman leases (1SCR 4-22). In response, the operators asserted several

10

affirmative defenses, including limitations (CR 776-1484) and filed a cross-motion for summary judgment against Magnum on all claims (CR 80-762).

A week before the hearing, Magnum amended its petition and added claims for (a) violations of the Texas Natural Resources Code, and (b) a declaratory judgment (CR 2812-19). This petition for the first time sought specific performance of the LOI (CR 2815, 2818)—although Magnum did not amend its summary judgment motion to seek specific performance.

The trial court held a hearing on January 25, 2013. By letter ruling later the Court stated it would grant Magnum's motion and deny the operators' motion (and that Magnum would take nothing from defendants Sunoco Partners Marketing & Terminals and Copano Field Services/Central Gulf Coast) (CR 2884-85). But without any further briefing, Magnum proposed a summary judgment order awarding it specific percentage working interests in the leases (CR 2901-06). The operators objected that Magnum did not seek this relief in its motion but had only sought judgment for liability for breach of contract (CR 2888-94). The court signed Magnum's proposed order (and amended it later *nunc pro tunc*) (CR 2907-13; SCR 854-55) [Appendix A, C].

11

Based on the parties' subsequent Rule 11 agreement stipulating as to the *amount* of damages and attorneys' fees to be awarded (but expressly conditioned on a valid determination of liability), the court signed a partial judgment for damages and fees against Crimson Exploration Operating, Inc., Anadarko Petroleum Corp., and Aubris Resources (CR 3173-90) [Appendix B]. The final judgment incorporated the prior, interlocutory rulings (CR 3328, 3345-56) [Appendix D, E].

## Summary of Argument

Some call oil and gas law a hybrid of contract law and property law. This litigation demonstrates why, because the dispositive issues involve aspects of both areas. This case also involves procedural issues dealing with summary judgment practice and the drafting of judgments.

At the center of the storm are two Lavaca County natural gas wells: the Zalman No. 3 and the Zalman No. 4. Magnum seeks millions of dollars based on a claim that it is owed royalties on production from these wells dating back to 2001.

The properties at issue were once covered by the 1956 Simpson lease. But during the 1990s, doubts arose about whether the lease was still alive. Those doubts complicated efforts to produce gas from the wells, and the concerned parties reacted by executing some new documents.

First, the uncertainty about the Simpson lease led to the execution of some "top leases," designed as a backup that would kick into effect in case the Simpson lease terminated—roughly as a homeowner who hopes to sell might sign a backup contract in case the main buyer falls through. These leases are referred as to the "Zalman leases." Second, several contracts

were negotiated and signed in attempts to keep things from descending into protracted litigation. Those contracts are at the core of this appeal.

The key contracts were between Magnum and United Resources, the well operator at the time (but whose rights have passed down to Crimson):

MSA  -  Master Settlement Agreement                Jan. 30, 2001

SMSA – Supp. Master Settlement Agreement           May 31, 2001

JOA   –  Joint Operating Agreement                 May 31, 2001

LOI    –  Letter of Intent                         Oct. 8, 2003

The LOI is the most important, and it contains several promises:

- "You agree to assign to Magnum as to the Top Leases . . . an ORRI of 1% and convertible to a 26.25% WI . . ."

- "You agree that . . . the 'Zalman Leases' . . . shall each be considered for all purposes (and in particular for the purposes of Paragraph 9B. of the [MSA]) as a 'renewal(s) and extension(s) obtained within one (1) year of the expiration' of the Simpson Lease . . ."

- "The parties agree that . . . the parties shall enter into such further agreements and assignments as are necessary . . ."

14

- "It is agreed that . . . the obligation of [the operator] to assign to Magnum certain deep rights . . . under Paragraphs 9J. and K. of the [MSA] shall be extended . . . to January 1, 2005."

At bottom, this appeal presents a clash about what the LOI means: is it a *conveyance* of the Zalman lease interests, or simply a *contract* to convey them? The judgment effectively ruled it was the former—a conveyance—by awarding Magnum overriding royalties and working interests in the Zalman leases (CR 3345-50). That is the fundamental error here: although Magnum argued that the operators breached contracts to assign interests in the leases—having assigned nothing—the court rendered judgment giving Magnum title to those interests, *as if assignments had occurred*.

But no assignments had occurred, and no authority allowed the court to treat the *contract* to assign those interests as itself the assignment. The court could only grant a *contract* remedy—like specific performance and damages. But Magnum's motion did not seek that relief. The record thus does not support the relief granted—i.e., an award of *title* to the Zalman lease interests, and damages for not receiving royalties under the leases.

The trial court instead should have viewed this case as a *contract* dispute. Viewed in that light, the core issues are (a) whether the LOI lacked

15

essential terms of an enforceable contract, and (b) when the four-year limitations clock had run on claims for breach of the LOI from the operators' failure to assign the Zalman lease interests. Magnum loses on both counts.

The LOI lacked all essential terms of an enforceable contract because although it proposes a farmout agreement as part of the exchange, the LOI does not contain all the terms of a farmout agreement. That was to come later, as the LOI indicated, but Magnum and the operators never agreed on farmout terms. As a result, the LOI is an unenforceable agreement-to-agree.

Regardless, by no later than July 2005 the clock had started running on Magnum's claims for breach of the LOI. That's because the LOI required certain rights to be assigned by that date, and by that date Magnum was on notice that the operators had not assigned anything—nearly two years after the LOI was executed. Even Magnum admitted that it expected assignment of rights under the LOI "immediately after" the LOI's execution. But Magnum did not file this suit until November 2010, over 4 years after that July 2005 date. Limitations thus bars the claims.

This contract case would be simpler if it did not come to this Court in a wrapper of procedural issues, but there are additional flaws in how the

16

judgment came about. For example, the trial court granted relief beyond what was requested by Magnum's summary judgment motion, contrary to *McConnell v. Southside ISD*, 858 S.W.2d 337 (Tex. 1993), and Texas Rule of Civil Procedure 166a. Hence, this brief includes procedural points. But the core of the appeal is a desire to see the contracts analyzed correctly.

This Court should render judgment that Magnum take nothing, but if the Court disagrees, it must remand to resolve fact issues. And if this Court rejects that approach, this Court can only give Magnum relief by modifying the judgment to fix technical problems and remanding to adjust the award of damages and attorneys' fees.

## Standard of Review

Unless otherwise noted herein, the summary judgment standard of review applies, because the final judgment is based on liability determined by an earlier summary judgment ruling (CR 3345-52).

This Court reviews a summary judgment de novo. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005); *Knapp Med. Ctr. v. Grass*, 443 S.W.3d 182, 187 (Tex. App.—Corpus Christi 2013, pet. denied). A summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c). In determining whether a genuine issue of material fact exists, evidence favorable to the responding party is taken as true; all reasonable inferences are made and all doubts resolved in favor of the respondent. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

The motion "must itself expressly present the grounds upon which it is made," *McConnell v. Southside ISD*, 858 S.W.2d 337, 341 (Tex. 1993), and "the non-movant's failure to except or respond cannot supply by default the grounds for summary judgment." *Id.* at 342. Thus, "if the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, the motion is legally insufficient." *Id.*

**Argument**

## I. THE TRIAL COURT ERRED IN AWARDING MAGNUM REAL PROPERTY INTERESTS ABSENT PROOF OF AN ASSIGNMENT [ISSUE 1].

The final judgment awards Magnum overriding royalty interests and working interests in four Zalman leases (CR 3345-56). That ruling is based on the court's earlier summary judgment decision (CR 2907-13). In their motion for summary judgment, and in a response to Magnum's motion, the operators argued correctly that Magnum had never received assignments of these property interests (CR 86-87, 95-98, 779, 785-92). The trial court erred in awarding property interests to Magnum absent an assignment.

### A. Oil and gas working interests and overriding royalties constitute real property interests transferred by conveyance—i.e., by a deed.

An oil and gas lease working interest is a real property interest. *See Matagorda Cty. Appraisal Dist. v. Coastal Liquids Partners LP*, 165 S.W.3d 329, 332 (Tex. 2005). An overriding royalty interest is a real property interest. *See Stroud Prod. LLC v. Hosford*, 405 S.W.3d 794, 818 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "A purchaser takes title to real property solely through a deed . . . An instrument that does not operate as a present conveyance of title to real property is a contract to convey rather than a deed." *Smith v. Davis*, No. 12–12–00169–CV, 2013 WL 2424266, at *4 (Tex.

App.—Tyler June 5, 2013, no pet.) (citing *Stephens Cnty. Museum, Inc. v. Swenson*, 517 S.W.2d 257 (Tex. 1974)). To obtain judgment for working interests or overriding royalty interests, Magnum needed a deed or some form of conveyance assigning those property interests.

## B. Magnum sued on a contract, not a conveyance or deed.

No document on which Magnum relies to support its judgment is a deed or conveyance; they are just contracts. For an instrument to convey real property, that instrument must contain "operative words or words of grant showing an intention by the grantor to convey to the grantee title to a real property interest." *Gordon v. W. Houston Trees Ltd.*, 352 S.W.3d 32, 43 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Harlan v. Vetter*, 732 S.W.2d 390, 392 (Tex. App.—Eastland 1987, writ ref'd n.r.e.). Language in the instrument anticipating future acts to effect a conveyance demonstrates that the instrument is not a deed. Thus, in *Green v. Canon*, 33 S.W.3d 855 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), the letter of intent was "insufficient to constitute a deed . . . the language of the instrument clearly contemplates future action, instructing appellants to call a lawyer and urging them to 'get started as soon as you can' so they can benefit from a homestead exemption." *Id.* at 858.

Magnum's petition and summary judgment motion asserted that the contracts—the SMSA, JOA, and LOI—were the basis for Magnum's rights (CR 2813-18; 1SCR 4-5, 9-22). But none of these three contracts is a *deed* or *conveyance* of real property interests. Indeed, Magnum's petition admits the contracts are what they purport to be: "settlement agreements" for which Magnum pleaded specific performance (CR 2813, 2818).

*1. The SMSA and JOA are contracts, not deeds or conveyances.*

The SMSA is a settlement agreement resolving litigation and related disputes (CR 987-1191). The SMSA obligates the parties to assign lease interests, but those assignments are attached as separate instruments that the SMSA had required the parties to independently execute (CR 1114-30, 1134-42, 1187-91). The SMSA does not reference the Zalman leases.

The JOA is a standard joint operating agreement in the oil and gas industry (CR 1058-1108). The JOA sets out the respective contractual obligations of the working interest owners with regard to lease operations, but the JOA does not convey interests in any leases—nor does it reference the Zalman leases.

Thus, neither the SMSA nor JOA constitutes a deed or conveyance of any Zalman lease interests. Those two documents are contracts.

21

*2. The LOI is a contract, not a deed or conveyance.*

Magnum ultimately conceded that its case depends not on those two contracts but on the LOI, which Magnum said "incorporates rights granted Magnum under" the other agreements and "creates Magnum's interests in the subsequent 2001 and 2003 top leases" (CR 2815, 2858). However, the LOI is not conveyance, either. As explained below, the LOI is just a *contract* to convey Zalman lease interests and lacks essential terms that the parties anticipated would appear in a future contract that Magnum never signed.

First, the LOI states it is a contract—"The parties agree that this letter agreement is a letter of intent"—and repeatedly employs the language of a contract: "We agree to farmout to you . . . You agree to assign to Magnum as to the Top Leases . . . You agree that the following described Oil and Gas Leases . . . shall each be considered for all purposes . . . This agreement shall, in all things, be binding" (CR 1295-96). The LOI states it is a "counterproposal" to the proposal that United sent Magnum on October 3, 2003 (CR 1295). In short, the LOI rejected the United offer of contract terms and offered new terms that United accepted by signing it.

Second, the LOI contemplates that a separate instrument be executed to assign all the interests—most importantly, those in paragraph 2 therein.

The LOI states: "The parties agree . . . that the parties shall enter into such *further agreements and assignments* as are necessary to effectuate the intent expressed herein" (emphasis added). The LOI contemplates a separate assignment for all interests. The LOI says that United "agree[s] to assign" leases. The LOI also provides that "the guiding purpose of this agreement is for you to assign to Magnum interests in the Top Leases." And the LOI expressly extends the deadline to separately assign "deep rights" under MSA paragraphs 9J and 9K. In this way, the LOI anticipates future acts to effect the agreed-upon conveyances.

Third, the LOI incorporated the MSA, which itself also contemplated separate instruments to effect the conveyances contemplated therein. The MSA contemplated "further documentation" to transfer interests granted therein, and assignment forms are attached (CR 819-20, 824-26, 829, 928-55). LOI paragraph 2 refers to MSA paragraph 9B, which states that interests granted in "extension or renewal" leases "shall be assigned" to Magnum (CR 819-20). Magnum concedes that the SMSA, JOA, and LOI "must be read together" (1SCR 12). Construed together, they confirm an intention for separate instruments to effect contemplated assignments.

23

Construed as a whole, the LOI defeats attempts to locate in isolated phrases an implied, present intent to convey. As one court explained:

> It is true that the instrument contains words appropriate to a present conveyance. The use of the words 'sold and conveyed' are presumptively words of conveyance, as insisted by appellant. But it also contains expressions not only inappropriate to a conveyance but entirely contrary to such purport. The instrument, of course, must be construed as a whole . . . "It is universally established, however, that even though an instrument use such words, if, considering same as a whole, it reasonably appears that the parties contemplate a subsequent deed of conveyance, the contract will be construed as executory and not as a deed."

*Continental Royalty Co. v. Marshall*, 239 S.W.2d 837, 840 (Tex. Civ. App.—Texarkana 1951, no writ) (construing contract that contained the phrase "we, [the sellers], for and in consideration of $8.33-1/3 per acre, to be paid by the [the buyers], do hereby bargain, sell and convey . . . "); *cf. Currie v. Burgess*, 132 Tex. 104, 108, 120 S.W.2d 788, 790 (1938) (executory contract to convey land not a conveyance).

Fourth, the LOI contains no operative *grant* language—e.g., "to have and to hold" or "United hereby assigns." In short, the LOI contains no words of grant indicating a present intent to convey Zalman lease interests. For that reason Magnum argued—consistent with its theory that the LOI

24

was a *contract*—that it "grants Magnum the *contractual right to a conveyance*" of the Zalman lease interests (CR 1704) (emphasis added).

Fifth, in subsequent instruments, Magnum itself acknowledged that the LOI was an agreement. The November 2004 letter agreement that amended the LOI deadline for assigning "deep rights" refers to the LOI as an "Agreement." By implementing an exchange of additional consideration in order to amend the LOI, the letter implicitly acknowledged that the LOI constitutes a contract (CR 1299). In a "Memorandum of Agreement" by which Magnum filed the LOI in county clerk land records, its general partner's president swore under oath that the LOI was "an agreement with United Resources . . . which agreement set out certain rights and obligations" regarding the Zalman leases (CR 743-45).

Sixth, Magnum's petition pleaded that the LOI was an "agreement" and sought specific performance of the LOI through "formal conveyance of interests" (CR 2815, 2818). This pleading constitutes a binding judicial admission that the LOI is a contract, not a conveyance. *See, e.g.*, *Li Li v. 1821 W. Main Dev. LLC*, No. 14-10-1227-CV, 2011 WL 5926679, at *4 (Tex. App.—Houston [14th Dist.] Nov. 29, 2011, pet. denied); *Walker v. Kleiman*, 896 S.W.2d 413, 415-16 (Tex. App.—Houston [1st Dist.] 1995, no writ).

25

By effectively ruling that the LOI was an instrument that conveyed mineral rights, the trial court's ruling threatens the utility of the letter of intent as a convenient device by which oil and gas operators can jointly outline a business plan and agree to implement the plan with formal instruments that are properly written and recorded. The letter of intent is almost universally a means of initiating such a plan, not consummating it. Based on the trial court's ruling that the LOI was both the contract and the performance of it, the oil and gas industry can have no certainty that their outline of the intent to pursue a joint business plan will not be severed from the flexible framework of contract law and deemed to be a done deal.

## C. The judgment could not properly award Magnum a working interest or overriding royalties — or stipulated damages and fees.

Absent an actual conveyance instrument, Magnum was not entitled to summary judgment awarding it the Zalman lease interests, and the judgment against the operators in that regard should be reversed. As a result, the award of damages and attorneys' fees must be reversed. That award was based on the parties' Rule 11 stipulation providing: "Absent an order or judgment establishing liability, these stipulations shall not provide independent grounds for a judgment" (CR 3173, 3184, 3186). Reversing the

26

judgment for liability thus eliminates the contractual basis for an award of damages and fees. Thus, because the judgment for liability must be reversed, this Court must enforce the Rule 11 stipulation by reversing the award of damages and fees as well. *See Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007) (court has a ministerial duty to enforce valid Rule 11 agreement).

## II.    THIS COURT SHOULD REVERSE THE TRIAL COURT'S JUDGMENT AND RENDER JUDGMENT THAT MAGNUM TAKE NOTHING.

Upon reversing the trial court's judgment, this Court must render the judgment the trial court should have rendered. Tex. R. App. P. 43.3. This court must render summary judgment that Magnum take nothing because (a) Magnum cannot recover on the claims it asserted, and (b) the summary judgment record supports a take-nothing judgment for the operators.

### A.    Magnum cannot recover for breach of contract in the alternative.

Magnum could only recover for breach of contract, the only theory argued in its summary judgment motion (1SCR 4-22). That motion sought to enforce only "contractual rights" in the SMSA, the JOA, and the LOI (1SCR 4-5). Interpretation of these agreements presented a legal issue based on contract construction rules. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*,

165 S.W.3d 310, 312 (Tex. 2005). This Court must "construe a contract by the language contained in the document," *El Paso Field Servs., L.P. v. Mastec N. Am., Inc.*, 389 S.W.3d 802, 811 (Tex. 2012), and must attempt to harmonize all contract provisions by analyzing them "with reference to the whole agreement," *Frost Nat'l Bank*, 165 S.W.3d at 312. Magnum's contract theory of recovery fails for the reasons explained below.

1. *The LOI is an unenforceable agreement to agree: the LOI omits essential terms of a binding contract [Issue 2].*

The LOI does impose obligations on the operators to assign certain Zalman lease interests. But the LOI does not contain all essential terms of the bargain. As Magnum's president said, both parties "agreed that it may need to be changed to [a] formal agreement" (CR 1471-72). This is particularly true regarding the "farmout proposed" therein. The LOI does not contain precise terms of the farmout; indeed, the parties never reached agreement on those terms (CR 707-26, 759-62, 1357-59, 1362, 1461, 2137). Therefore, the LOI is not an enforceable contract, and judgment for Magnum based on a contract theory is improper.

Three cases demonstrate that the LOI is unenforceable. In *Getty Oil Co. v. Blevco Energy Inc.*, 722 S.W.2d 51 (Tex. App.—Eastland 1986), *writ*

28

*dism'd*, 770 S.W.2d 569 (Tex. 1989), the letter agreement stated: "Getty Oil will farmout to Blevco Energy, *providing a mutually acceptable agreement can be reached . . .*" *Id.* at 52 (emphasis in original). The court of appeals ruled that this instrument "does not contain all of the essential elements of the agreement" because, among other things, it was "subject to a 'mutually acceptable agreement' with reference to the details of the agreement, such as the location of the test well and the acreage to be included in the initial unit." *Id.* at 53.

The LOI contains similar language, as it (a) gives basically no terms of the proposed farmout agreement, and (b) provides that "the parties shall enter into *such further agreements and assignments* as necessary to effectuate the intent expressed herein" (emphasis added). A farmout was an essential term: the LOI expressly made the farming out of these interests in exchange for an assignment "the guiding purpose of this agreement" (CR 1296).

The case of *Young Refining Corp. v. Pennzoil Co.*, 46 S.W.3d 380 (Tex. App.—Houston [1st Dist.] 2001, pet. denied), shows that the LOI itself does not constitute a farmout. In that case the court of appeals noted that the "primary characteristic of the farmout is the obligation of the assignee to drill one or more wells on the acreage as a prerequisite to completion of the

29

transfer." *Id.* at 389. The court held: "The Pennzoil/Southland contract does not give Southland the right, nor does it impose on Southland a duty, to drill a well on the Bass Pecan lease. Therefore, as a matter of law, the Pennzoil/Southland contract is not a farm-out." *Id*. (emphasis added).

The LOI imposes no express obligation on the operators to drill wells on the acreage—and so omits a "primary characteristic" of farmout agreements. In addition, the LOI lacks many terms that often appear in farmouts, including the timing for completion of drilling operations, pooling terms, ingress and egress conditions, performance obligations and indemnities, insurance, and reassignment (*see* CR 129-145).

Third, in *Smith v. Sabine Royalty Corp*., 556 S.W.2d 365 (Tex. Civ. App.—Amarillo 1977, no writ), the plaintiff argued that an exchange of letters resulted in a binding farmout agreement. The court of appeals ruled, however, that the initial "offer" letter lacked all the essential terms of the agreement—namely, the terms of the proposed farmout agreement:

> The letter merely outlined a proposal under which Sabine would grant a lease to Dalco at some time and Dalco would, in turn, farm out its interest to Smith . . . Regarding the proposed farmout agreement between Dalco and Smith, nothing is mentioned about any terms other than Smith's drilling obligation, his right to an eventual assignment from Dalco and

30

Dalco's option for a 50% backin interest after payout. No other details of the arrangement are mentioned . . .

*Id.* at 370. The same is true of the LOI: it was merely an agreement to assign leases in exchange for a farmout, but was not itself the farmout. Moreover, in *Smith* the letter at least imposed a drilling obligation. The LOI imposes no such obligation (by contrast with that set forth in an executed farmout agreement in the record as between other parties) (CR 129-55).

A contract that leaves essential terms open for future negotiation is unenforceable. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). The LOI left essential terms open: the terms of the farmout. As the operators argued, the LOI was thus unenforceable (CR 98-100, 793-95).

2. *Limitations bars suit for damages and specific performance of the LOI's obligation to convey interests [Issue 3].*

Another reason this Court may not render judgment for Magnum on its contract theory is that limitations bars the LOI's enforcement.

Magnum's summary judgment motion sought judgment for breach of its "contractual rights" (1SCR 5). At the hearing Magnum said that it sought contract damages and "specific performance" for conveyance of Zalman lease interests (2 RR 11 [01-25-13]). A claim for "debt" or "specific performance of a contract for the conveyance of real property" must be

31

filed "not later than four years after the day the cause of action *accrues*." *See* Tex. Civ. Prac. & Rem. Code §§ 16.004(a), 16.051 (emphasis added); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).

A breach of contract claim generally *accrues* when the breach occurs, or when the claimant has notice of facts sufficient to place it on notice of the breach. *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006); *Stine*, 80 S.W.3d at 592. A party breaches a contract when the party fails to perform a duty or breaches an obligation the contract imposes. *See Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied).

This lawsuit was filed on November 16, 2010 (CR 4). The operators argued that the contract claim accrued at the very latest on July 1, 2005, and that because this was more than four years before suit was filed, limitations barred the contract claim (CR 108, 783-85). As shown below, the operators established that the claim accrued at the very latest in July 2005, and thus limitations had expired when suit was filed in 2010. Therefore, the trial court could not properly grant Magnum a judgment on its breach of contract claim.

(a) *Limitations bars claims regarding "deep rights" leases — the 2003 Zalman lease and 2006 Zalman lease.*

Because the 2001 Zalman lease held the shallower rights (where the Zalman No. 3 well was drilled), the 2003 Zalman lease and 2006 Zalman lease implicated the "deep rights" in the subject acreage (i.e., depths below 12,920 feet, where the Zalman No. 4 well was drilled) (CR 2663-64, 2667-68, 2737, 2775). SMSA paragraph 9 allowed the operator to drill a well and then assign Magnum minerals below the depth in which that well was completed (CR 1727-28). The LOI set a new deadline to assign these "deep rights," a deadline extended to July 1, 2005 (CR 1296, 1299). No assignment occurred by that date (CR 2137), so there was a breach on July 2, 2005.

Case law confirms this. In *South Plans Switching Ltd. v. BNSF Railway Co.*, 255 S.W.3d 690 (Tex. App.—Amarillo 2008, pet. denied), the breach occurred when the defendant, at a closing, delivered a quitclaim deed to real property rather than (as promised) an outright assignment of the fee. *Id.* at 707 ("If BNSF was required to assign leases in some way other than by quitclaim deed, on July 2, 1999, when the deal was closed, SAW must have actual knowledge that there were no lease assignments made."). Here, because breach occurred July 2, 2005, the limitations period on Magnum's

33

claim for an assignment of the deep rights expired four years later, by July 2, 2009. This lawsuit was filed in 2010 (CR 4). As to the "deep rights" to be assigned under SMSA paragraphs 9J and 9K, the limitations period had expired when suit was filed.

The Zalman No. 4 well was completed in the "deep rights" zone—at a depth of 14,223 feet (CR 2728-29). The court should have granted summary judgment that Magnum take nothing on its claim for breach of obligations to assign the 2003 Zalman lease and the 2006 Zalman lease interests, and its claim for interests in or production from the Zalman No. 4 well, because these claims were filed outside the limitations period, over four years after July 2, 2005.

(b) *Limitations bars claims regarding the 2001 Zalman lease.*

When the LOI was signed in 2003, there were no "deep rights" in the 2001 Zalman lease; in 2002, that lease had terminated as to depths below 12,846 feet (the lowest depth from which the Zalman No. 3 well was then producing), pursuant to the lease's horizontal termination clause (CR 2664, 2667, 2704). The operators nevertheless contend that assignment of rights in that lease were also due by the LOI's July 1, 2005 deadline. *See infra* section IV.B. But even if they were not, limitations had still expired for a claim to

34

assign those interests, because under Texas law those interests had to be assigned *within a reasonable time*; a reasonable time had expired by July 1, 2005; and that date was more than four years before suit was filed.

When a contract does not provide a time for performance, the law will imply that a performance must occur within a reasonable time. *Moore v. Dilworth*, 142 Tex. 538, 542, 179 S.W.2d 940, 942 (1944); *Pearcy v. Envtl. Conservancy of Austin & Cent. Tex. Inc.*, 814 S.W.2d 243, 246 (Tex. App.—Austin 1991, writ denied). What is a "reasonable time" presents a question of law when the material facts and circumstances are not disputed. *E.g.*, *Barber v. Colorado ISD*, 901 S.W.2d 447, 450 (Tex. 1995); *Cheek v. Metzer*, 116 Tex. 356, 366, 291 S.W. 860, 863 (1927). Texas law presumes that time is of the essence in contracts for the sale of mineral interests. *Hurbrough v. Cain*, 571 S.W.2d 216 (Tex. Civ. App.—Tyler 1978, no pet.).

Thus, in *Smith v. Sabine Royalty Corp.*, the court of appeals set aside a jury's finding that a 63-day delay in accepting a farmout proposal was reasonable; the court held that the delay was unreasonable as a matter of law. 556 S.W.2d at 369.

This lawsuit was filed November 16, 2010, so the question is whether, before November 16, 2006, a reasonable time had passed for performance

35

of the October 2003 LOI obligation to assign rights in the 2001 Zalman lease. The record establishes that (as the operators argued) by July 1, 2005, nearly two years after the LOI was signed, a reasonable time for performing it had passed:

- When Magnum signed the LOI in October 2003, Magnum believed it should receive an assignment of its interests "immediately after" (CR 690), but Magnum did not receive an assignment "immediately after."

- Late in 2003, the parties exchanged farmout proposals but failed to agree (CR 707-26, 759-62), putting Magnum on notice that year (and certainly by the end of 2004) that it had received no assignment.

- By July 1, 2005, nearly two years after signing the LOI, United had failed to assign the "deep rights," and that failure put Magnum on notice of breach for other LOI assignment obligations (CR 689-90).

- The Zalman No. 3 well started producing in May 2001, but except for two months in early 2002, Magnum was paid no overriding royalty, so Magnum received no monthly payments in 2003 through April 2006, when the zone stopped producing (CR 2097-98), putting Magnum on notice from late 2003 forward that it had no assignment.

36

This case is like *Hurbrough v. Cain*, 571 S.W.2d 216 (Tex. Civ. App.—Tyler 1978, no pet.), where a letter agreement required overriding royalty interests to be assigned to the plaintiff on leases acquired during a 5-year period from August 1969 to August 1974. The agreement was "silent as to the time of performance by [the defendants], i.e., when they were to convey to appellant such overriding royalty interest as set out in the letter." *Id.* at 221. The court noted the "reasonable time" rule and emphasized "the rule in Texas . . . that time is of the essence in a contract for the sale of a mineral interest." *Id.* The court held that the lawsuit filed in May 1976 fell within the limitations period for leaseholds obtained in 1973 but the suit fell outside the limitations period for leases obtained from 1969 to 1970. *Id.* at 222. The court concluded that, as a matter of law, for leases acquired in September 1970 royalties should have been assigned by May 1972—a "reasonable period" of less than two years. *Id.*

At the very least, this evidence creates a fact issue regarding whether: (a) the date of July 1, 2005, was a "reasonable period of time" for assigning Magnum all lease rights the LOI promised, and (b) Magnum was otherwise on notice of a breach more than four years before this lawsuit was filed. *See Bailey v. Williamson*, 129 S.W.2d 1162, 1162-63 (Tex. Civ. App.—El Paso

37

1939, no writ) (fact issue existed regarding whether July 3 contract to assign lease was performed within a reasonable time when lease was assigned September 14). In that case, remand would be proper. *See infra* section IV.A.

(c) *Limitations was not tolled by the discovery rule or fraud.*

Magnum argued the discovery rule, a limited exception that defers accrual of a cause of action until the injury was or could have reasonably been discovered. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929 (Tex. 2011). For the discovery rule to apply, "the nature of the injury must be inherently undiscoverable." *See Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006). But failure to perform a contract for gas royalties is not inherently undiscoverable. *See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 736-37 (Tex. 2001); *BP Am. Prod. v. Marshall*, 342 S.W.3d 59, 66-67 (Tex. 2011).

Magnum also asserted that fraudulent concealment tolled limitations. *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008). However, "fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *See Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983). The operators could not conceal Magnum's failure to receive an assignment. Magnum knew about

that when the operators assigned nothing "immediately after" the LOI. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 232 (Tex. 2011); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 213, 226 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Because neither the discovery rule nor any fraudulent concealment prevented the limitations period from expiring on Magnum's contract claim, limitations bars the enforcement of all Zalman lease assignment obligations in the LOI.

3. *The SMSA imposed no obligations to assign Zalman leases [Issue 4].*

To the extent Magnum relies on the SMSA as the basis for its claimed interests, the argument fails. The SMSA does not grant contractual rights to the Zalman leases. None of those leases is mentioned in the SMSA.

The SMSA grants contractual rights to receive interests in the *Simpson lease*, but the SMSA was ineffective in that regard because the lease had terminated before the SMSA was signed. In April-May 1979, and in May-October 1989, there was no production from wells on Simpson lease lands and no payment of shut-in royalties. *See supra* p. 1. As a result, in the *Castle* lawsuit the trial court ruled that the lease terminated by 1996 (CR 657-58).

39

That was correct. The cessation of production for time periods stated in the lease, without timely shut-in royalty payments, terminates the lease automatically, even if the well is later put back in production. *E.g.*, *Samano v. Sun Oil Co.*, 621 S.W.2d 580, 584 (Tex. 1981); *Bachler v. Rosenthal*, 798 S.W.2d 646, 650 (Tex. App.—Austin 1990, writ denied); *Adams v. Cannan*, 253 S.W.2d 948, 951 (Tex. Civ. App.—San Antonio 1952, writ ref'd n.r.e.). The lease will not continue beyond its primary term absent timely shut-in royalty payments. *Marifarms Oil & Gas, Inc. v. Westhoff*, 802 S.W.2d 123, 125–26 (Tex. App.—Fort Worth 1991, no writ); *Amber Oil & Gas Co. v. Bratton*, 711 S.W.2d 741, 743 (Tex. App.—Austin 1986, no writ). Thus, the Simpson lease had indeed terminated. *See, e.g.*, *Hagar v. Martin*, 277 S.W.2d 195, 197 (Tex. Civ. App.—Dallas 1955, writ ref'd n.r.e.).

The SMSA granted rights to assignment of an "extension or renewal" of the Simpson lease "obtained within one (1) year of the expiration of said Lease(s)" (1SCR 40). But that provision does not matter, either. The Zalman leases are new leases, not extensions or renewals of the Simpson lease (CR 2663-64, 2666, 2699-2716, 2737-46, 2775-86). Each lease warrants that it is a top lease only (CR 2706-07, 2744-45, 2775-76). Moreover, because the Simpson lease had terminated by January 1, 1996, the SMSA could only

40

ensure rights in a renewal/extension lease obtained by January 1, 1997 (within one year of the expiration of the Simpson lease). The Zalman leases were executed in 2001 or later, too late to satisfy this requirement.[1]

4. *The JOA imposed no obligations to assign Zalman leases [Issue 4].*

To the extent Magnum relies on the JOA as the basis for its claimed interests, the argument fails. The JOA does not expressly obligate anyone to assign Zalman lease interests. The JOA mentions none of those leases.

The JOA imposed on the operators an obligation to assign renewals or extensions of the Simpson lease obtained within six months after that lease terminated (CR 1381). But that does not matter, because the Zalman leases were signed well over six months after the Simpson lease terminated. So even if the Zalman leases were renewals/extensions of the Simpson lease, the JOA imposed no obligation to assign interests in them.

## B. Magnum did not prove rights in the 2008 Zalman lease.

The judgment grants relief regarding a 2008 Zalman lease (CR 3355). Magnum's motion sought no relief regarding that lease; the 2008 Zalman

---

[1] When a leasehold estate under a lease expires, royalty interests reserved in that lease terminate. *See Sunac Petroleum Corp. v. Parkes*, 416 S.W.2d 798, 804 (Tex. 1967). Parties cannot avoid this rule by simply agreeing that a new lease will constitute a "renewal and extension" of an expired lease. *Id.* at 802-03; *Exploration Co. v. Vega Oil & Gas Co.*, 843 S.W.2d 123, 125-26 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *McCormick v. Krueger*, 593 S.W.2d 729 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

lease is not in the record (1SCR 5 [n.3]; CR 1689 [n.3], 2662-2788). Magnum thus did not show it was entitled to interests in that lease. *See infra* section III.A, pp. 46-50.

**C.     Magnum did not prove rights in the 2006 Zalman lease.**

Magnum has no rights in the 2006 Zalman lease because (a) the LOI is an unenforceable agreement-to-agree, (b) limitations has expired, and (c) the other contracts grant no rights to Zalman leases. *Supra* section II.A.

In addition, the LOI only granted Magnum a contractual right to an assignment of this lease if it was "taken and/or . . . effective within one year of release of all or part of the lands covered by the Simpson Lease" (CR 1295). Magnum did not prove this. The 2006 Zalman lease was a top lease subject to both the 2001 Zalman lease and the 2003 Zalman lease. The 2001 Zalman lease released deep rights in March 2002 (CR 2664, 2667), but the 2006 Zalman lease was not taken within a year of that date. As to the 2003 Zalman lease, Magnum admitted that it could not show whether, after the Zalman No. 4 well failed to produce in 2008, well operations prevented the lease from releasing lands at depths at which that well was completed (the 2003 Zalman lease covered only that depth) (CR 2667, 2668 [¶¶17,19]). Rather, Magnum asserted hypothetical positions—"[i]f the Operator saved

42

the 2003 lease" and "[i]f the 2003 lease did terminate for lack of operations" and "[t]o the extent the 2006 top lease is effective"—conceding it could not prove either (CR 2668, 2790-91, 2849).

If the 2003 lease is still in effect, the 2006 lease has not vested and may never vest, since by its terms it terminates if it does not vest within 10 years after the expiration of its 2-year primary term (CR 2776). Because Magnum did not establish that the 2003 Zalman lease terminated, Magnum did not establish an obligation to assign the 2006 Zalman lease under the LOI.[2]

## D. Magnum cannot recover in the alternative based on other claims pleaded, because the claims were dismissed without objection.

Magnum cannot recover for conversion because (a) it has no property interest in the leases, and thus no interest in production from them, and (b) it filed no motion seeking relief for conversion (1SCR 5-22; CR 2928). The only relief Magnum sought under the Texas Natural Resources Code was for prejudgment interest (3SCR 1704, 1714-20). The court denied that relief

---

[2] Magnum's motion sought no specific performance of the LOI, so no basis exists for granting Magnum any assignment of the lease for that reason, too. In addition, because the 2006 Zalman lease only covers deep rights where the Zalman No. 4 well was completed, if Magnum were entitled to rights in the 2006 Zalman lease it may only recover as damages the minimal production from the Zalman No. 4 well. Such damages would have to be redetermined on remand, because the parties' Rule 11 stipulation on damages included production from the Zalman No. 3 well (CR 3188-90).

(CR 3328), and Magnum sought no other relief under the Code. The judgment thus disposed of these claims, without objection (CR 3353). *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001); *AGD LP v. Quest Principal Inves. Inc.*, No. 13-12-720-CV, 2014 WL 6602314, at *4 (Tex. App.—Corpus Christi Nov. 20, 2014, no pet). So Magnum cannot recover on these claims in the alternative. *See George v. Vick*, 686 S.W.2d 99, 100 (Tex. 1984).

**E. The trial court should have granted the operators' summary judgment motion—and therefore this Court must do so.**

*1. Judgment may be granted on a cross-motion for summary judgment.*

When both sides file a summary judgment motion and the trial court grants one and denies the other, the appellate court reviews both motions and renders the judgment the trial court should have rendered. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002). In doing so, the court considers all evidence accompanying both motions. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). Based on the arguments set forth above, this Court should modify the judgment, rendering summary judgment that Magnum take nothing from Crimson, Aubris Resources, and Anadarko Petroleum, and affirming the judgment as so modified.

## 2. *The operators are entitled to judgment for title to the working interests.*

This Court should render a judgment that Magnum take nothing on its claims for a working interest in the leases. *See* Tex. R. App. P. 43.2(c). As explained below, with respect to the working interests the final judgment essentially awards trespass-to-try-title relief. *See infra* section III.A.2. When a plaintiff does not prove its case in a trespass-to-try-title action, the proper judgment is that the plaintiff take nothing, divesting the plaintiff of title to the lands in controversy and vesting title in defendant. *See Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982); *Halbert v. Green*, 156 Tex. 223, 228, 293 S.W.2d 848, 851-52 (1956). Magnum proved no conveyance of interests in the Zalman leases, and the contracts conveyed no title to such interests. *See supra* sections I, II. So Magnum had no title to the working interest.

Because Magnum could not prove title to the working interest, Magnum should recover nothing on such title claims. The operators' summary judgment motion requested that relief (CR 86-87, 95-98, 100-04, 111). That motion should have been granted, so rendition of judgment is proper that Crimson owns the disputed Zalman lease working interests. *See Masgas v. Anderson*, 310 S.W.3d 567, 570-71 (Tex. App.—Eastland 2010, pet. denied).

3. *Magnum could not recover the overriding royalty interests, either.*

Similarly, Magnum may not recover overriding royalty interests. The operators' motion requested that relief, on the grounds that Magnum could not prove it had received conveyances of these interests (CR 86, 95-98). The record thus supports judgment for the operators on that issue. *See supra* section I (citing authorities requiring a conveyance instrument).

4. *The operators are entitled to judgment on all other claims asserted.*

The operators are entitled to judgment on Magnum's claim for breach of contract because, as the operators argued in their cross-motion, (a) the LOI was unenforceable, (b) any claim on the LOI was barred by limitations, and (c) neither the SMSA nor the JOA gave Magnum rights in the Zalman leases (CR 95-104, 106-09). *See supra* section II.A, pp. 26-40 (authorities).

Magnum never requested judgment for conversion or recovery under the Texas Natural Resources Code (other than prejudgment interest) either by motion or otherwise, and without objection those claims were resolved on the merits by final judgment (rather than, e.g., by dismissal on mootness grounds). *See supra* section II.D (and legal authorities therein). Judgment on those claims is thus properly affirmed. Tex. R. App. P. 43.2(a).

### III. EVEN IF MAGNUM HAD ASSIGNMENTS OF THE LEASE INTERESTS AT ISSUE, THE JUDGMENT SHOULD BE REVERSED [ISSUE 3].

Should this court decide that the parties' agreements *did* constitute conveyances of the Zalman lease interests—which might otherwise support an award of those interests—this Court should reverse the judgment and either render judgment for the operators (section II.E) or remand the case (section IV), because Magnum's summary judgment motion was legally insufficient to support a summary judgment awarding overriding royalty interests and working interests in the Zalman leases.

### A. The trial court erred in granting Magnum any relief, because Magnum's summary judgment motion requested none [Issue 3].

Magnum's summary judgment motion did not specifically, expressly present the basis for the summary judgment the trial court rendered. The motion (a) failed to specify any relief that was sought and (b) asserted breach of "contractual rights" rather than a claim for trespass-to-try-title or conversion of its royalty interests (1SCR 4-5, 22). In short, as the operators objected before the court signed the summary judgment (CR 2888-94), the motion was legally insufficient to support the grant of any relief, never mind the sweeping relief that the court granted.

47

*1. A summary judgment motion must specifically, expressly present the grounds for summary judgment — including any relief granted.*

Summary judgment "cannot be affirmed on a ground not specifically presented in the motion." *Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex. 1992). The grounds for summary judgment must be "expressly presented in the motion." *McConnell*, 858 S.W.2d at 342. Thus, in *Cartwright v. Cologne Production Co.*, 182 S.W.3d 438 (Tex. App.—Corpus Christi 2006, pet. denied), this Court reversed part of a summary judgment granting an accounting, because although the petition sought that relief the plaintiffs "did not raise this issue in their motion for summary judgment." *Id.* at 447.

Similarly, after reversing a take-nothing summary judgment, the Texas Supreme Court declined to render judgment on a cross-motion for fees that only sought "partial summary judgment as to liability on the contracts but not as to damages." *See Bowman v. Lumberton ISD*, 801 S.W.2d 883, 889-90 (Tex. 1990). Likewise, this Court declined to award specific performance when the motion had not "expressly presented" that remedy. *Consumer Portfolio Servs. Inc. v. Obregon*, No. 13-09-548-CV, 2010 WL 4361765, at *9 (Tex. App.—Corpus Christi Nov. 4, 2010, no pet.).

A trial court errs "by granting relief that no party requested in any summary-judgment motion." *See Mattox v. Cnty. Comm'rs Ct.*, 389 S.W.3d 464, 469 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). This error is reversed routinely. *Willy v. Winkler*, No. 01-10-115-CV, 2010 WL 5187719, at *2-3 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, no pet.); *Richardson v. Allstate Tex. Lloyd's*, 72 S.W.3d 779, 792 (Tex. App.—Dallas 2007, no pet.); *Quicksilver Res., Inc. v. CMS Mktg. Servs. & Trading Co.*, No. 02-03-251-CV, 2005 WL 182951 (Tex. App.—Fort Worth Jan. 27, 2005, pet. denied).

> 2. *Magnum's motion did not specifically, expressly request an award of a working interest—a trespass-to-try-title remedy.*

The judgment awards Magnum a percentage working interest in the Zalman leases (CR 3345-56). A working interest in an oil and gas lease is a possessory interest in real property. *Coastal Liquids Partners*, 165 S.W.3d at 332; *Rogers v. Ricane Enters. Inc.*, 884 S.W.2d 763, 768-70 (Tex. 1994). Except for boundary disputes, a trespass-to-try-title action under chapter 22 of the Texas Property Code is the sole means of adjudicating disputed claims of title to real property; such claims cannot be adjudicated by declaratory judgment. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384 (Tex. 2011); Tex. Civ. Prac. & Rem. Code § 37.004(c).

49

Magnum did not plead a boundary line dispute, so it could only have the court adjudicate its percentage working interest in the Zalman leases by proving a claim of trespass-to-try-title—i.e., by proving either: (a) superior title from a common source, (b) a chain of conveyances from the sovereign, (c) title by limitations, or (d) prior possession not abandoned. *See, e.g.*, *Land v. Turner*, 377 S.W.2d 181, 183 (Tex. 1964); *Lile v. Smith*, 291 S.W.3d 75, 77-79 (Tex. App.—Texarkana 2009, no pet.). To obtain judgment for such relief, Magnum's summary judgment motion had to expressly seek and prove that relief. *See MCT Energy Ltd. v. Collins*, No. 07-13-304-CV, 2014 WL 5422918, at *2-3 (Tex. App.—Amarillo Oct. 21, 2014, no pet.).

Magnum's motion did not seek adjudication of title as "the specific grounds therefor." No trespass-to-try-title issues were "expressly set out in the motion or in an answer or any other response." Tex. R. Civ. P. 166a(c). The motion did not cite chapter 22 of the Texas Property Code or related case law or any of the four established methods for proving title. In short, the motion was legally insufficient to obtain judgment in trespass-to-try-title, so the court should not have awarded Magnum any percentage working interest in the Zalman leases. *See Kennedy Con. Inc. v. Forman*, 316 S.W.3d 129, 135-37 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *cf.*

50

*Martin v. McDonnold*, 247 S.W.3d 224, 230 (Tex. App.—El Paso 2006, no pet.) (plaintiff's motion satisfied Rule 166a because it "clearly identifies their cause of action and the four methods by which they could prove title to their land").

   3. *Magnum's motion did not specifically, expressly request declaratory relief regarding the overriding royalty interests.*

When Magnum filed its summary judgment motion, the live petition asserted conversion and breach of contract and sought damages, interest, attorneys' fees, and costs (CR 22-23). The motion argued that Magnum had "contractual rights" allowing it "to participate in the current lease," but sought no declaratory relief, specific performance, damages, or any relief at all, never mind specific interests in the Zalman leases (SCR 4-5, 9, 22). In short, no request for declaratory relief, for overriding royalties or anything else, was "expressly set out in the motion." Tex. R. Civ. P. 166a(c).

Magnum first pleaded declaratory relief a week before the summary judgment hearing (CR 2816), but Magnum did not request such relief until after the court had ruled (CR 2884-85). It was only then that Magnum submitted a proposed order, for the first time seeking such relief through

the back door (3SCR 1680, 1691-97). The trial court could not properly grant that relief, because Magnum's motion did not request it.

## B.     The trial court's ruling was harmful.

The trial court's error was harmful. *See* Tex. R. App. P. 44.1(a).

First, the operators were denied 21-day notice under Rule 166a of the relief requested, and the opportunity to timely brief the above errors. *See*, e.g., *Positive Feed, Inc. v. Guthmann*, 4 S.W.3d 879, 881 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Second, declaratory judgment cannot adjudicate title to a possessory interest in real property, like the Zalman lease working interests here. *See MCT Energy*, 2014 WL 5422918, at *2-3; *Wolfe v. Devon Energy Prod. Co.*, 382 S.W.3d 434, 460-61 (Tex. App.—Waco 2012, pet. denied); *Sw. Guar. Trust Co. v. Hardy Rd. 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ("[T]he declaratory judgment act will not supplant a suit to quiet title . . . ."). The operators were prevented from timely raising this issue as well.

Third, if the motion had sought declaratory relief—or even specific performance—the operators could have timely asserted in their response a *laches* defense: (a) unreasonable delay in asserting rights, and (b) good faith

change of position by another to his detriment because of the delay. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964). The record, *see supra* pp. 5-7, would support that defense. *See De Benavides v. Warren*, 674 S.W.2d 353, 362 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). The operators were precluded from timely preserving this point for appeal.

Fourth, if the motion had properly sought relief in trespass-to-try-title, the operators could have objected that the claim had not been pleaded properly under technical pleading requirements. Tex. R. Civ. P. 783-809.

Fifth, the judgment contained significant errors. *See infra* section V. Magnum conceded that the judgment contained error when, months later, it filed a motion to correct one such error *nunc pro tunc* (CR 2928-53; 1SCR 854-55). The operators were denied an opportunity to timely bring these to the court's attention in a summary judgment response.

## IV.   ALTERNATIVELY, REMAND IS THE ONLY PROPER RELIEF.

If this Court were to determine that operators Crimson Exploration, Aubris Resources, and Anadarko Petroleum are not entitled to judgment that Magnum take nothing, the only proper alternative relief is a remand for further proceedings as to these defendants. Tex. R. App. P. 43.3.

## A. Remand to determine fact issues regarding limitations issue.

At the very least fact issues exist regarding whether, outside the limitations period, a reasonable time had expired for assigning all interests the LOI required the operators to assign. *See supra* section II.A.2(b), p. 36.

## B. Remand to resolve ambiguity in the LOI.

Fact issues would also preclude summary judgment if this Court determined that the LOI was ambiguous. When a contract on which a suit is brought is ambiguous, "summary judgment is improper because the interpretation of the instrument is a question of fact for the jury." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). Reversal and remand is appropriate even if the summary judgment response does not assert ambiguity. *E.g., Amedisys Inc. v. Kingwood Home Health Care LLC*, 437 S.W.3d 507, 517 (Tex. 2014); *White v. Moore*, 760 S.W.2d 242, 243 (Tex. 1988).

A contract is ambiguous "when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951).

The parties dispute two key aspects of the LOI's meaning.

First, the parties disputed whether the January 1, 2005 assignment deadline (later extended to July 1, 2005) applied to *all* lease interests to be assigned, or just to "deep rights" in the 2003 Zalman lease. *See supra* section II.A.2. That deadline should apply to all interests to be assigned, because the LOI refers to assignment deadlines in both paragraph 9J and paragraph 9K in this regard, and the respective assignment obligations therein encompass interests at all depths, not just the "deep rights" (CR 824-26, 928-39).

Second, the parties disputed whether Magnum was to receive a full 100% of the 31.5% x 26.25% working interest (as the judgment awards) or only 50% of the 31.5% x 26.25% working interest—the percentage to which Magnum would have been entitled under the Simpson lease pursuant to the SMSA's proportionate reduction clause (CR 819-20) (because, as Magnum concedes, it owned only a 50% interest in the Simpson lease at that time) (CR 2001, 2662-63, 2684, 2907-13). In short, Magnum's lease interests under the LOI must be proportionately reduced by 50%. *See infra* section V.B, p. 59.

If ambiguity exists, remand is proper. Tex. R. App. P. 43.2(d).

## C. Remand to resolve issues regarding proper scope of relief.

Finally, even if Magnum is entitled to some relief, a remand to the trial court is the most appropriate way to determine that remedy.

Should this Court alter any liability determinations, the trial court should reconsider the awards for damages and attorneys' fees. *See, e.g.*, *Jay Petroleum LLC v. EOG Res. Inc.*, 332 S.W.3d 534, 539 (Tex. App.—Houston [1st Dist.] 2009, no pet.). If Magnum did not prove a working interest in the leases, its attorneys' fees award should be reversed in part, since a plaintiff cannot recover fees in trespass-to-try-title. *See Martin v. Amerman*, 133 S.W.2d 262, 267 (Tex. 2004). The trial court should also consider an award of attorneys' fees to the operators for prevailing, even in part, on the declaratory judgment relief, as "the Declaratory Judgments Act allows fee awards to either party in all cases." *MGM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009).

Moreover, although the operators seek correction of the declaratory relief in the alternative, *infra* section V, correcting the declaratory judgment is a complicated matter and the rules' word limitations preclude broader discussion of the errors. *See* Tex. R. App. P. 9.4(i)(2). In lieu of this Court parsing the leases, the matter should be fully briefed in the trial court.

Finally, if a remand is proper, this Court may only remand the breach of contract claim, not the claims for conversion and violation of the Natural Resources Code (CR 2815-16), because: (a) Magnum's motion requested no relief as to these claims, but sought judgment only as to "breach of contract claims" (CR 2928), and (b) the judgment "disposes of all claims and parties, is final and is appealable" (CR 3353). In short, without objection the trial court ruled that Magnum take nothing for conversion and violation of the Code. *Lehmann*, 39 S.W.3d at 200. Those claims are resolved.

## V.    ONLY A MODIFIED JUDGMENT COULD EVER BE PROPER [ISSUE 5].

### A.    Judgment for Magnum could only involve an award of damages and attorneys' fees for breach of contract.

Even if Magnum were entitled to judgment, it could only recover a judgment for damages and attorneys' fees based on breach of contract. Magnum's motion sought a judgment for liability for "its breach of contract claims" (CR 2928), and was not based on any other theory. *See supra* section III.A. Therefore, at best Magnum can recover—based upon the parties' Rule 11 stipulation—only damages and fees based on that theory of liability.

At no time did Magnum file any motion seeking declaratory relief, specific performance of the LOI, damages for conversion, or a recovery under the Natural Resources Code (except for prejudgment interest, which the trial court denied). No such relief having been requested, no judgment for such relief in the alternative is proper, as such relief has been waived. *See George v. Vick*, 686 S.W.2d at 100; Tex. R. Civ. P. 166a(c), 279.

## B. Judgment for declaratory relief should be substantially modified.

Assuming the trial court properly rendered a judgment awarding interests in the Zalman leases and wells, the judgment must be modified to correct several mistakes. Tex. R. App. P. 43.2(b). Some mistakes result from the court granting relief not supported by the summary judgment motion or evidence, *see McConnell*, 858 S.W.2d at 342, and others were asserted by post-judgment motion (CR 3359-72). This Court should correct these errors in that judgment. *See Petro Pro, Ltd. v. Upland Res., Inc.*, 279 S.W.3d 743, 748-52 (Tex. App.—Amarillo 2007, no pet.); *Ostrowski*, 38 S.W.3d at 253.

The rules of contract construction, discussed above, also apply in construing the leases. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786 (Tex. 1995); *Alford v. Krum*, 671 S.W.2d 870 (Tex. 1984). This Court should make the following corrections—or remand these matters to the trial court:

58

- Under the LOI, Magnum was to receive the interests "credited" to it under the SMSA—resulting in an award of a 31.5% x 26.25% x 50% working interest (not the 100% that the judgment awards), due to Magnum's 50% interest in the Simpson lease (CR 2001, 2662-63, 2684, 2907-13).

- The judgment grants relief regarding a 2008 Zalman lease (CR 3355). That relief should be deleted. *Supra* section II.B.

- Magnum did not prove whether the 2003 Zalman lease or the 2006 Zalman lease was effective, so Magnum cannot have judgment as to either lease. *See supra* section II.C.

- The operators contend that the record establishes termination of the Simpson lease. Should this Court conclude otherwise, Magnum can recover no working interests or overriding royalty interests through the Zalman leases: they are all top leases, dependent upon termination of the Simpson lease (CR 2663-64, 2666, 2699-2716, 2737-46, 2775-86). Magnum had to prove when the underlying Simpson lease expired, and it did not, but equivocated about that issue: "the expiration of the Simpson Lease—whenever that occurred" (1SCR 15). The judgment was equally equivocal (CR 3347). If the record does not establish termination

of the Simpson lease, Magnum did not prove it had interests through any Zalman lease, and Magnum has no right to judgment in that regard.

- The judgment awards Magnum interests as to "wells" and "any wells" on the subject lands (CR 3348-49). Magnum only sought relief regarding the Zalman No. 3 and Zalman No. 4 wells (1SCR 9, 22). The judgment should not grant relief as to "wells" or "any wells" generally.

- The court improperly declared an interest in the 2003 Zalman lease "as amended on October 15, 2003 to include two additional tracts" as allegedly reflected in a lease amendment (CR 3355). Magnum's motion did not request that relief (1SCR 5 [n.3]; CR 1689 [n.3]).

- The judgment declares that Magnum's interests arise from the SMSA and the JOA, which "are binding on" the operators (CR 3347). If Magnum has any interests, they arise only from the LOI (CR 2815 [¶22]; 1SCR14-15). Because the Simpson lease expired the operators are not bound by the JOA, or SMSA: rights under those agreements depend on a valid Simpson lease. The above relief should be deleted.

- The judgment errs in granting interests in the leases as to "all depths" and all "depths outside the Magnum Reserved Zone," and in declaring that Magnum's interests "are identical to those interests

60

Magnum owned in and under the Simpson lease," as the agreements describe (CR 3348-49). This was error because, to the extent effective:

- The <u>2001 Zalman lease</u> terminated as to all depths below 12,846 feet.

- The <u>2003 Zalman lease</u> terminated as to all depths below 14,532 feet.

- The <u>2006 Zalman lease</u> terminated as to all depths below 12,234 feet.

(CR 2664, 2667, 2668). Magnum has no interests in these deep rights.

- The judgment grants a 50% leasehold estate and 50% working interest in certain depths in the "Simpson Gap Tract" in addition to a 1% overriding royalty interest and 26.25% working interest after payout, *proportionately reduced to a 50% interest*. Magnum's petition only sought an interest proportionately reduced to a *31.5% interest* (CR 2816). The judgment should grant no relief regarding the "Simpson Gap Tract" or it should be modified to award only a 31.5% interest, not a 50% interest, in that regard. *See Simpson v. Curtis*, 351 S.W.3d 374, 380-81 (Tex. App.—Tyler 2010, no pet.) (vacating injunctive relief not pleaded); *Chesapeake Operating Inc. v. Denson*, 201 S.W.3d 369, 373-74 (Tex. App.—Amarillo 2006, pet. denied) (modifying declaratory relief).

- The judgment grants Magnum "the right to participate" in the subject leases (CR 3347). The LOI does not say "participate." The term

refs to benefits from bonuses, rentals, and/or royalties, not leases. *See Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*, 223 S.W.3d 1, 14 (Tex. App.—El Paso 2005, pet. denied). That language is properly deleted.

- The judgment says that "even if [the Simpson lease] was terminated, and regardless of when it was terminated," the contracts grant Magnum specific lease rights (CR 3347) (brackets omitted). The judgment should say that the Simpson lease terminated on or before January 1, 1996. *See supra* p. 1.

- The judgment declares that Magnum's interests in the Zalman leases "are identical to those interests Magnum owned in and under the Simpson lease, as . . . described in the Settlement Agreements" (CR 3348). But LOI ¶ 2 says Magnum's interests are to be calculated as in LOI ¶ 1. There should be no "identical" interests language.

- The judgment declares that a farmout has been "effected by the Settlement Agreements" (CR 3348). Magnum's motion did not seek that relief, and the agreements do not "effect" a farmout. *See supra* section II.A. The parties exchanged proposed farmout drafts but never executed one (CR 1357-59, 1362, 1461, 2137). The judgment should not recognize or presume a farmout. *See Young Refining*, 46 S.W.3d at 389.

62

## Prayer

This Court should reverse the final judgment rendered against the operators; modify it to render judgment that Magnum take nothing and that the operators own the disputed working interests in the Zalman leases; affirm the judgment as modified; and award the operators their costs. *See* Tex. R. App. P. 43.4; Tex. R. Civ. P. 131.

Respectfully submitted,

*/s/ Stacy R. Obenhaus*

James G. Munisteri

Texas Bar No. 14667380

Stacy R. Obenhaus

Texas Bar No. 15161570

John MacVane

Texas Bar No. 24085444

Gardere Wynne Sewell LLP

1000 Louisiana, Suite 2000

Houston, Texas 77002

Tel:   713.276.5500

Fax:   713.276.5555

jmunisteri@gardere.com

sobenhaus@gardere.com

jmacvane@gardere.com

David M. Gunn

Texas Bar No. 08621600

Erin H. Huber

Texas Bar No. 24046118

Beck Redden

1221 McKinney, Suite 4500

Houston, Texas 77010

Tel:  713.951.6278

Fax:  713.951.3720

dgunn@beckredden.com

ehuber@beckredden.com

[Crimson parties only]

COUNSEL FOR DEFENDANTS-APPELLANTS

## Certification

I certify that this document (including Appendices K and L) contains **13,691** words, apart from those parts excluded by Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Stacy R. Obenhaus*
Stacy R. Obenhaus

## Certificate of Service

I certify that a copy of this document was served August 24, 2015, by delivery to the following through the electronic case manager:

Frank Weathered
Dunn Weathered Coffey Rivera &
   Kasperitis PC
611 S. Upper Broadway
Corpus Christi, Texas  78401
Fax: 361.883.1899

James T. Clancy
Branscomb PC
802 N. Carancahua, Suite 1900
Corpus Christi, Texas  78401-0036
Fax: 361.888.8504

Macklin K. Johnson
Law Offices of Macklin K. Johnson
109 East Second Street
Hallettsville, Texas  77964
Fax: 361.798.3217

*/s/ Stacy R. Obenhaus*
Stacy R. Obenhaus

# Appendix A

Order on Motions for Summary Judgment
(Oct. 22, 2013)

(CR 2907-13)

| | | |
|---|---|---|
| MAGNUM PRODUCING L.P., | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | |
| vs. | § | LAVACA COUNTY, TEXAS |
| | § | |
| | § | |
| COPANO FIELD SERVICES/CENTRAL | § | |
| GULF COAST L.P., et al., | § | 25th JUDICIAL DISTRICT |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

On January 25, 2013 came on for consideration in the above-entitled and numbered cause Plaintiff's Traditional Motion for Summary Judgment (the "Magnum Motion") against Crimson Exploration, Inc.; Crimson Exploration Operating, Inc.; Southern G Holdings, LLC; Exco Resources, Inc.; Anadarko Petroleum Corporation; Anadarko E&P Company, LP; Kerr-McGee Oil & Gas Onshore, LP; Westport Oil & Gas Company, LP; and Aubris Resources, LP f/k/a United Resources, LP (hereinafter collectively the "Operators"). Also on said date came on for consideration the Operators' cross-motion for summary judgment (the "Operators' Motion") against Plaintiff. Also on said date came on for consideration the cross-motion for summary judgment filed by Copano Field Services/Central Gulf Coast , L.P. (the "Copano Motion"). Also on said date came on for consideration the cross-motion for summary judgment filed by Sunoco Partners Marketing & Terminals, L.P. (the "Sunoco Motion").

The court considered: (1) the Magnum Motion; (2) the Operators' Motion; (3) the Copano Motion; (4) the Sunoco Motion; (5) any and all responses and replies in support of or in opposition to the Magnum Motion, Operators' Motion, Copano Motion, and Sunoco Motion; (6) Operators' Supplemental Motion for Summary Judgment and Motion for Leave to File Supplemental Motion for Summary Judgment and Late Summary Judgment Evidence; (7) Plaintiff's Response to Operators' Supplemental Motion for Summary Judgment and Motion for

FILED
10-22 A.D., 20 13
at 9:38 o'clock A M
Sherry T. Hanke, Clerk
DISTRICT COURT LAVACA COUNTY, TX
By_____Deputy

{C0839357.DOC:3}                    1

Leave to File Supplemental Motion for Summary Judgment and Late Summary Judgment Evidence; (8) all summary judgment evidence, including late-filed evidence made the subject of Operators' motion for leave and Plaintiff's response to Operators' motion for leave; (7) the pleadings on file at the time of the hearing; and (8) argument of counsel, and determined that:

1.    the Magnum Motion should be in all things GRANTED;

2.    the Sunoco Motion should be in all things GRANTED;

3.    the Copano Motion should be in all things GRANTED; and

4.    the Operators' Motion should be in all things DENIED.

IT IS THEREFORE DECLARED, ADJUDGED AND DECREED that even if that certain oil, gas and mineral lease recorded at Volume 90, Page 270, Oil and Gas Records of Lavaca County, Texas (the "Simpson Lease") was terminated, and regardless of when it was terminated, the January 30, 2001 Master Settlement Agreement and May 30, 2001 Supplemental Master Settlement Agreement each by and between Magnum Producing and Operating Company n/k/a Magnum Producing, LP and United Oil & Minerals Limited Partnership n/k/a Aubris Resources, LP, et. al. (the "Settlement Agreements"), the January 30, 2001 Joint Operating Agreement by and between Magnum Producing and Operating Company n/k/a Magnum Producing, LP and United Oil & Minerals Limited Partnership n/k/a Aubris Resources, LP, et. al. (the "JOA") and the October 8, 2003 Letter Agreement by and between Magnum Producing and Operating Company n/k/a Magnum Producing, LP and United Resources, LP n/k/a Aubris Resources, LP (the "Letter Agreement"), all of which are binding on the Operators, give Magnum Producing, LP ("Magnum") the right to participate in any renewal, extension, or top lease taken by any of the Operators or their successors or assigns, covering lands that were the subject of the Simpson Lease, and which were taken by or assigned to the Operators before

{C0839357.DOC:3}                    2

October 8, 2003, or which became effective within one year of the expiration date of the immediately preceding lease covering lands that were the subject of the Simpson Lease, including but not limited to the oil, gas and mineral leases described in Exhibit "A".

IT IS FURTHER DECLARED, ADJUDGED AND DECREED that Magnum's interests in and under those certain oil, gas and mineral leases described in Exhibit "A" to this Judgment are identical to those interests Magnum owned in and under the Simpson Lease, as those interests are described in the Settlement Agreements. Specifically, before taking into consideration the farmout to the Operators effected by the Settlement Agreements, Magnum's interests include:

1.  A 31.5% leasehold interest as to the "Simpson 310 Acre Tract" (all depths), the "Simpson 320 Acre Tract" (all depths) and the western forty (40) acres of the "Simpson Gap Tract" (all depths) as those lands are defined in Exhibit "B" to this Judgment;

2.  A 50% leasehold interest as to the "Simpson Gap Tract", as such land is defined in Exhibit "B", save and except the westerly forty (40) acres of the "Simpson Gap Tract";

IT IS FURTHER DECLARED, ADJUDGED, AND DECREED that by virtue of the farmout to the Operators effected by the Settlement Agreements, JOA and Letter Agreement, Magnum owns and is entitled to leasehold interests in the leases described in Exhibit "A," together with interests in production proceeds from wells covered by the leases described in Exhibit "A," (or any extension or renewal of the leases described in Exhibit "A" which are obtained within one (1) year of the expiration of the leases described in Exhibit "A") equal to:

1.  A 31.5% leasehold estate and working interest in production from depths between 12,075 feet and 12,265 feet, inclusive (the "Magnum Reserved Zone"), under the applicable lease(s) described in Exhibit "A" to this Judgment, as to wells located on the "Simpson 310 Tract," "Simpson 320 Tract," and the western forty (40) acres of the "Simpson Gap Tract,";

2.  A 50% leasehold estate and working interest in production from depths between 12,075 feet and 12,265 feet, inclusive (the "Magnum Reserved Zone"), under the applicable lease(s) described in Exhibit "A" to this

{C0839357.DOC:3}                    3

Judgment, as to wells located on the "Simpson Gap Tract," save and except the western forty (40) acres of the "Simpson Gap Tract;"

3. A 1% of 31.5% overriding royalty interest in production before "payout" (as "payout" is defined in the Settlement Agreements), from depths outside the Magnum Reserved Zone under the applicable lease(s) described in Exhibit "A" to this Judgment, as to wells located on the "Simpson 310 Tract," "Simpson 320 Tract," and the western forty (40) acres of the "Simpson Gap Tract;"

4. A 1% of 50% overriding royalty interest in production before "payout" (as "payout" is defined in the Settlement Agreements) from depths outside the Magnum Reserved Zone under the applicable lease(s) described in Exhibit "A" to this Judgment, as to wells located on the "Simpson Gap Tract" less and except the western forty (40) acres of the "Simpson Gap Tract;"

5. Upon "payout" (as "payout is defined in the Settlement Agreements) of and election to participate in any wells located on the "Simpson 310 Tract," "Simpson 320 Tract," and the western forty (40) acres of the "Simpson Gap Tract;", a 26.25% of 31.5% leasehold estate and working interest in after-payout production from all depths outside the Magnum Reserved Zone under the oil, gas and mineral leases described in Exhibit "A" to this Judgment; and

6. Upon "payout" (as "payout is defined in the Settlement Agreements) of and election to participate in any wells located on the "Simpson Gap Tract," save and except the western forty (40) acres of the "Simpson Gap Tract," a 26.25% of 50% leasehold estate and working interest in after-payout production from all depths outside the Magnum Reserved Zone under the oil, gas and mineral leases described in Exhibit "A" to this Judgment.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Magnum's take nothing from Defendants Copano Field Services/Central Gulf Coast , L.P. and Sunoco Partners Marketing & Terminals, L.P.

Signed this _____22nd_____ day of _____October_____ 2013.

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

_____
James T. Clancy
Counsel for Magnum Producing LP

{C0839357.DOC:3}                    5

**EXHIBIT "A"**

1. Oil gas and mineral lease entered February 14, 2001 by and between Joe A. Zalman, Jr. and wife, Margaret L. Zalman 2000 Family Limited Partnership, et al. as LESSOR and United Oil & Minerals Limited Partnership as LESSEE, covering 699.595 acres more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 226, Page 516 of the Official Property Records of Lavaca County, Texas.

2. Oil, gas and mineral lease entered September 10, 2003 by and between Joe A. Zalman Jr. and Margaret L. Zalman 2000 Family Limited Partnership, et al. as LESSOR and United Resources, LP as LESSEE, covering 699.595 acres, more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 295, Page 848 of the Official Property Records of Lavaca County, Texas, and as amended on October 15, 2003 to include two additional tracts comprising 310 acres, more or less and 108.865 acres, more or less, as reflected by the recorded amendment at Volume 297, Page 690 of the Official Property Records of Lavaca County, Texas.

3. Oil, gas and mineral lease entered August 17, 2006 by and between Joe A. Zalman, Jr. and Margaret L. Zalman 2000 Family Limited Partnership, et al. as LESSOR and Kerr-McGee Oil & Gas Onshore, LP, covering 1438.46 acres, more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 392, Page 847 of the Official Property Records of Lavaca County, Texas.

4. Oil, gas and mineral lease entered August 11, 2008 by and between Joe A. Zalman, Jr. and Margaret L. Zalman 2000 Family Limited Partnership, et al., covering 1128.46 acres, more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 465, Page 19 of the Official Property Records of Lavaca County, Texas.

## EXHIBIT "B"

1. **"Simpson 310 Acre Tract"**: 310 acres, more or less, out of the Amando De La Croix Survey, A-112, Lavaca County, Texas; being the same lands described in that certain "Partial Assignment of Oil and Gas Lease" dated May 19, 1997 by and between JWR Exploration, Inc., et al., as Assignor and United Oil & Minerals, Inc., as Assignee, recorded in Volume 126 at Page 307 of the Official Records of Lavaca County, Texas.

2. **"Simpson 320Acre Tract"**: 320 acres, more or less, out of the Amando De La Croix Survey, A-112, Lavaca County, Texas; being that certain 320 acres lying immediately east of and contiguous to the above described 310 acre tract with the western boundary line of said 320 acres being common with the eastern boundary line of said 310 acre tract; the northern and southern boundaries of said 320 acres being common with the northern and southern boundaries of the said Amando De La Croix Survey, respectively; and, the eastern boundary of said 320 acres being parallel to and a sufficient distance from its said western boundary to comprise 320 acres more or less.

3. **"Simpson Gap Tract"**: lands lying within the Amando De La Croix Survey, A-112, the northern boundary of which is the northern boundary line of said survey, the southern boundary of which his the southern boundary line of said survey, the western boundary of which is the eastern boundary of the "Simpson 320 Acre Tract" being more particularly described in that certain Supplemental Master Settlement Agreement dated May 30, 2001 by and between Magnum Producing & Operating Company and United Oil & Minerals, LP, et. al. and the eastern boundary of which is the western boundary of the "Simpson 870 Acre Tract" being more particularly described in that certain Supplemental Master Settlement Agreement dated May 30, 2001 by and between Magnum Producing & Operating and United Oil & Minerals, LP, et al.

# Appendix B

Partial Judgment
(Apr. 9, 2014)

(CR 3173-90)

No. 10-11-21591-CV

| MAGNUM PRODUCING LP | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| vs. | § | |
| | § | 25th JUDICIAL DISTRICT |
| | § | |
| COPANO FIELD SERVICES/CENTRAL | § | |
| GULF COAST LP, *et al.* | § | |
| | § | LAVACA COUNTY, TEXAS |

## PARTIAL JUDGMENT

Based on this Court's *Order on Motions for Summary Judgment* (signed October 22, 2013) [Exhibit A] (including such revisions as this Court may make thereto *nunc pro tunc*) and the parties' rule 11 agreement (filed on or about March 27, 2014) (the "Rule 11 Agreement") [Exhibit B], this Court renders partial judgment as follows:

### DAMAGES

1.      Magnum Producing LP ("Plaintiff") shall recover from Aubris Resources, LP damages in the amount of $10,048.38.

2.      Plaintiff shall recover from Anadarko Petroleum Corporation damages in the amount of $361,671.25.

3.      Plaintiff shall recover from Crimson Exploration Operating Inc. damages in the amount of $4,383,979.74.

### REMAINING DEFENDANTS

4.      Plaintiff shall take nothing from the defendants not named in the preceding paragraphs. In particular, Plaintiff shall take nothing from Copano Field Services/Central Gulf Coast LP, Sunoco Partners Marketing & Terminals LP, Crimson Exploration Inc.,

4-9 **FILED**
_____ A.D., 20 _14_
at _1:32_ o'clock _A___ M
Sherry T. Henke, Clerk
DISTRICT COURT LAVACA COUNTY, TX.
By _____ Deputy

Southern G Holdings LLC, Anadarko E&P Company LP, Kerr-McGee Oil & Gas Onshore LP, Westport Oil & Gas Company LP, and United Resources LP f/k/a United Oil and Minerals LP.

## INTEREST

5.     Plaintiff shall recover, on all amounts awarded above, postjudgment interest at the rate of 5% per annum from the date a final judgment is signed until paid in full in accordance with Chapter 304, Texas Finance Code.

6.     The availability and amount of prejudgment interest, if any, shall be determined as set forth in the Rule 11 Agreement [Exhibit A].

## ATTORNEYS' FEES & COSTS

7.     Plaintiff shall recover attorneys' fees and costs from Aubris Resources LP, Anadarko Petroleum Corporation, and Crimson Exploration Operating Inc., jointly and severally, in the amount of $350,000.   Except as otherwise provided in the Rule 11 agreement [Exhibit B], this amount shall constitute full and final compensation for any attorneys' fees and costs incurred by Plaintiff prior to final judgment.

8.     Plaintiff shall recover fees and costs from Aubris Resources LP, Anadarko Petroleum Corporation, and Crimson Exploration Operating Inc., jointly and severally, in the following amounts in the event of an appeal:

    a.  $75,000 for an appeal to the Thirteenth Court of Appeals;

    b.  $15,000 for filing or responding to a petition for review in the Texas Supreme Court;

    c.  $15,000 for filing or responding to a brief on the merits in the Texas Supreme Court;

d. $10,000 for preparing and presenting oral argument to the Texas Supreme Court;

e. $5,000 for filing or responding to a motion for rehearing in the Texas Supreme Court.

## PARTIAL JUDGMENT

9. This is intended to be a partial judgment reflecting the issues resolved by the Court and by the parties' stipulations thus far.

SIGNED this 9th day of April 2014.

_____
HONORABLE JUDGE W. C. KIRKENDALL

AGREED AS TO FORM:

ʔSM:⸺

_____

James G. Munisteri, Gardere Wynne Sewell LLP
Counsel for Defendants

_____

James T. Clancy, Branscomb PC
Counsel for Plaintiffs

Gardere01 - 6431941v.3

CAUSE NO. 10-11-21591-CV

| | | |
|---|---|---|
| MAGNUM PRODUCING L.P., | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| vs. | § | LAVACA COUNTY, TEXAS |
| | § | |
| COPANO FIELD SERVICES/CENTRAL | § | |
| GULF COAST L.P., et al., | § | 25th JUDICIAL DISTRICT |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

On January 25, 2013 came on for consideration in the above-entitled and numbered cause Plaintiff's Traditional Motion for Summary Judgment (the "Magnum Motion") against Crimson Exploration, Inc.; Crimson Exploration Operating, Inc.; Southern G Holdings, LLC; Exco Resources, Inc.; Anadarko Petroleum Corporation; Anadarko E&P Company, LP; Kerr-McGee Oil & Gas Onshore, LP; Westport Oil & Gas Company, LP; and Aubris Resources, LP f/k/a United Resources, LP (hereinafter collectively the "Operators"). Also on said date came on for consideration the Operators' cross-motion for summary judgment (the "Operators' Motion") against Plaintiff. Also on said date came on for consideration the cross-motion for summary judgment filed by Copano Field Services/Central Gulf Coast , L.P. (the "Copano Motion"). Also on said date came on for consideration the cross-motion for summary judgment filed by Sunoco Partners Marketing & Terminals, L.P. (the "Sunoco Motion").

The court considered: (1) the Magnum Motion; (2) the Operators' Motion; (3) the Copano Motion; (4) the Sunoco Motion; (5) any and all responses and replies in support of or in opposition to the Magnum Motion, Operators' Motion, Copano Motion, and Sunoco Motion; (6) Operators' Supplemental Motion for Summary Judgment and Motion for Leave to File Supplemental Motion for Summary Judgment and Late Summary Judgment Evidence; (7) Plaintiff's Response to Operators' Supplemental Motion for Summary Judgment and Motion for

**EXHIBIT A to Partial Judgment**

{C0839357.DOC:3}                    1

**FILED**
10-22 A.D., 20 13
at 7:38 o'clock A M
Sherry T. Hanke, Clerk
DISTRICT COURT LAVACA COUNTY, TX
By_____ Deputy

Leave to File Supplemental Motion for Summary Judgment and Late Summary Judgment Evidence; (8) all summary judgment evidence, including late-filed evidence made the subject of Operators' motion for leave and Plaintiff's response to Operators' motion for leave; (7) the pleadings on file at the time of the hearing; and (8) argument of counsel, and determined that:

1. the Magnum Motion should be in all things GRANTED;

2. the Sunoco Motion should be in all things GRANTED;

3. the Copano Motion should be in all things GRANTED; and

4. the Operators' Motion should be in all things DENIED.

IT IS THEREFORE DECLARED, ADJUDGED AND DECREED that even if that certain oil, gas and mineral lease recorded at Volume 90, Page 270, Oil and Gas Records of Lavaca County, Texas (the "Simpson Lease") was terminated, and regardless of when it was terminated, the January 30, 2001 Master Settlement Agreement and May 30, 2001 Supplemental Master Settlement Agreement each by and between Magnum Producing and Operating Company n/k/a Magnum Producing, LP and United Oil & Minerals Limited Partnership n/k/a Aubris Resources, LP, et. al. (the "Settlement Agreements"), the January 30, 2001 Joint Operating Agreement by and between Magnum Producing and Operating Company n/k/a Magnum Producing, LP and United Oil & Minerals Limited Partnership n/k/a Aubris Resources, LP, et. al. (the "JOA") and the October 8, 2003 Letter Agreement by and between Magnum Producing and Operating Company n/k/a Magnum Producing, LP and United Resources, LP n/k/a Aubris Resources, LP (the "Letter Agreement"), all of which are binding on the Operators, give Magnum Producing, LP ("Magnum") the right to participate in any renewal, extension, or top lease taken by any of the Operators or their successors or assigns, covering lands that were the subject of the Simpson Lease, and which were taken by or assigned to the Operators before

October 8, 2003, or which became effective within one year of the expiration date of the immediately preceding lease covering lands that were the subject of the Simpson Lease, including but not limited to the oil, gas and mineral leases described in Exhibit "A".

IT IS FURTHER DECLARED, ADJUDGED AND DECREED that Magnum's interests in and under those certain oil, gas and mineral leases described in Exhibit "A" to this Judgment are identical to those interests Magnum owned in and under the Simpson Lease, as those interests are described in the Settlement Agreements. Specifically, before taking into consideration the farmout to the Operators effected by the Settlement Agreements, Magnum's interests include:

1.  A 31.5% leasehold interest as to the "Simpson 310 Acre Tract" (all depths), the "Simpson 320 Acre Tract" (all depths) and the western forty (40) acres of the "Simpson Gap Tract" (all depths) as those lands are defined in Exhibit "B" to this Judgment;

2.  A 50% leasehold interest as to the "Simpson Gap Tract", as such land is defined in Exhibit "B", save and except the westerly forty (40) acres of the "Simpson Gap Tract";

IT IS FURTHER DECLARED, ADJUDGED, AND DECREED that by virtue of the farmout to the Operators effected by the Settlement Agreements, JOA and Letter Agreement, Magnum owns and is entitled to leasehold interests in the leases described in Exhibit "A," together with interests in production proceeds from wells covered by the leases described in Exhibit "A," (or any extension or renewal of the leases described in Exhibit "A" which are obtained within one (1) year of the expiration of the leases described in Exhibit "A") equal to:

1.  A 31.5% leasehold estate and working interest in production from depths between 12,075 feet and 12,265 feet, inclusive (the "Magnum Reserved Zone"), under the applicable lease(s) described in Exhibit "A" to this Judgment, as to wells located on the "Simpson 310 Tract," "Simpson 320 Tract," and the western forty (40) acres of the "Simpson Gap Tract,";

2.  A 50% leasehold estate and working interest in production from depths between 12,075 feet and 12,265 feet, inclusive (the "Magnum Reserved Zone"), under the applicable lease(s) described in Exhibit "A" to this

{C0839357.DOC:3}                     3

Judgment, as to wells located on the "Simpson Gap Tract," save and except the western forty (40) acres of the "Simpson Gap Tract;"

3. A 1% of 31.5% overriding royalty interest in production before "payout" (as "payout" is defined in the Settlement Agreements), from depths outside the Magnum Reserved Zone under the applicable lease(s) described in Exhibit "A" to this Judgment, as to wells located on the "Simpson 310 Tract," "Simpson 320 Tract," and the western forty (40) acres of the "Simpson Gap Tract;"

4. A 1% of 50% overriding royalty interest in production before "payout" (as "payout" is defined in the Settlement Agreements) from depths outside the Magnum Reserved Zone under the applicable lease(s) described in Exhibit "A" to this Judgment, as to wells located on the "Simpson Gap Tract" less and except the western forty (40) acres of the "Simpson Gap Tract;"

5. Upon "payout" (as "payout is defined in the Settlement Agreements) of and election to participate in any wells located on the "Simpson 310 Tract," "Simpson 320 Tract," and the western forty (40) acres of the "Simpson Gap Tract;", a 26.25% of 31.5% leasehold estate and working interest in after-payout production from all depths outside the Magnum Reserved Zone under the oil, gas and mineral leases described in Exhibit "A" to this Judgment; and

6. Upon "payout" (as "payout is defined in the Settlement Agreements) of and election to participate in any wells located on the "Simpson Gap Tract," save and except the western forty (40) acres of the "Simpson Gap Tract," a 26.25% of 50% leasehold estate and working interest in after-payout production from all depths outside the Magnum Reserved Zone under the oil, gas and mineral leases described in Exhibit "A" to this Judgment.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Magnum's take nothing from Defendants Copano Field Services/Central Gulf Coast , L.P. and Sunoco Partners Marketing & Terminals, L.P.

Signed this ___22nd___ day of ___October___ 2013.

         _____
         JUDGE PRESIDING

APPROVED AS TO FORM:

James T. Clancy
Counsel for Magnum Producing LP

# EXHIBIT "A"

1. Oil gas and mineral lease entered February 14, 2001 by and between Joe A. Zalman, Jr. and wife, Margaret L. Zalman 2000 Family Limited Partnership, et al. as LESSOR and United Oil & Minerals Limited Partnership as LESSEE, covering 699.595 acres more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 226, Page 516 of the Official Property Records of Lavaca County, Texas.

2. Oil, gas and mineral lease entered September 10, 2003 by and between Joe A. Zalman Jr. and Margaret L. Zalman 2000 Family Limited Partnership, et al. as LESSOR and United Resources, LP as LESSEE, covering 699.595 acres, more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 295, Page 848 of the Official Property Records of Lavaca County, Texas, and as amended on October 15, 2003 to include two additional tracts comprising 310 acres, more or less and 108.865 acres, more or less, as reflected by the recorded amendment at Volume 297, Page 690 of the Official Property Records of Lavaca County, Texas.

3. Oil, gas and mineral lease entered August 17, 2006 by and between Joe A. Zalman, Jr. and Margaret L. Zalman 2000 Family Limited Partnership, et al. as LESSOR and Kerr-McGee Oil & Gas Onshore, LP, covering 1438.46 acres, more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 392, Page 847 of the Official Property Records of Lavaca County, Texas.

4. Oil, gas and mineral lease entered August 11, 2008 by and between Joe A. Zalman, Jr. and Margaret L. Zalman 2000 Family Limited Partnership, et al., covering 1128.46 acres, more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 465, Page 19 of the Official Property Records of Lavaca County, Texas.

Page 3182

## EXHIBIT "B"

1. **"Simpson 310 Acre Tract"**: 310 acres, more or less, out of the Amando De La Croix Survey, A-112, Lavaca County, Texas; being the same lands described in that certain "Partial Assignment of Oil and Gas Lease" dated May 19, 1997 by and between JWR Exploration, Inc., et al., as Assignor and United Oil & Minerals, Inc., as Assignee, recorded in Volume 126 at Page 307 of the Official Records of Lavaca County, Texas.

2. **"Simpson 320Acre Tract"**: 320 acres, more or less, out of the Amando De La Croix Survey, A-112, Lavaca County, Texas; being that certain 320 acres lying immediately east of and contiguous to the above described 310 acre tract with the western boundary line of said 320 acres being common with the eastern boundary line of said 310 acre tract; the northern and southern boundaries of said 320 acres being common with the northern and southern boundaries of the said Amando De La Croix Survey, respectively; and, the eastern boundary of said 320 acres being parallel to and a sufficient distance from its said western boundary to comprise 320 acres more or less.

3. **"Simpson Gap Tract"**: lands lying within the Amando De La Croix Survey, A-112, the northern boundary of which is the northern boundary line of said survey, the southern boundary of which his the southern boundary line of said survey, the western boundary of which is the eastern boundary of the "Simpson 320 Acre Tract" being more particularly described in that certain Supplemental Master Settlement Agreement dated May 30, 2001 by and between Magnum Producing & Operating Company and United Oil & Minerals, LP, et. al. and the eastern boundary of which is the western boundary of the "Simpson 870 Acre Tract" being more particularly described in that certain Supplemental Master Settlement Agreement dated May 30, 2001 by and between Magnum Producing & Operating and United Oil & Minerals, LP, et al.

{C0839357.DOC:3}

7

**GARDERE**

*attorneys and counselors* ■ *www.gardere.com*

713/276-5500 (direct)
713/276-5555 (facsimile)
jmunisteri@gardere.com

March 27, 2012

**Via facsimile: 361-888-8504**
James T. Clancy
Clinton W. Twaddell
Branscomb PC
802 N. Carancahua, Suite 1900
Corpus Christi, Texas 78470-0700

Re:   No. 10-11-21591-CV; *Magnum Producing, L.P. v. Copano Field Services/Central, Gulf Coast L.P., et al.*; In the 25th District Court, Lavaca County, Texas

Dear Jim and Clint:

Crimson Exploration Inc., Kerr-McGee Oil & Gas Onshore LP, Westport Oil and Gas Company, Crimson Exploration Operating Inc. (successor by merger to Southern G. Holdings LLC), Aubris Resources LP (f/k/a United Resources L.P.), Anadarko Petroleum Corporation, Anadarko E&P Company LP, and EXCO Resources Inc. ("Defendants") agree to the following terms, subject to their right to appeal the *Order on Motions for Summary Judgment* (signed October 22, 2013) and all relief and grounds for liability therein:

1. **Damages**: The parties stipulate to damages as follows:

   a. Magnum Producing L.P. ("Plaintiff") shall recover from Aubris Resources LP damages in the amount of $10,048.38;

   b. Plaintiff shall recover from Anadarko Petroleum Corporation damages in the amount of $361,671.25;

   c. Plaintiff shall recover from Crimson Exploration Operating Inc. damages in the amount of $4,383,979.74; and

   d. Plaintiff shall not be entitle to recover any damages not described in this paragraph.

EXHIBIT "B" TO PARTIAL JUDGMENT FILED ON OR ABOUT 3/28/2014

2. **Attorneys' fees and costs**: The parties stipulate to attorneys' fees and costs as follows:

   a. Plaintiff shall recover attorneys' fees and costs from Aubris Resources LP, Anadarko Petroleum Corporation, and Crimson Exploration Operating Inc., jointly and severally;

   b. Plaintiff shall not recover attorneys' fees or costs from the remaining Defendants;

   c. Reasonable and necessary appellate fees and costs for Plaintiff are as follows:

      i. $75,000 for an appeal to the Thirteenth Court of Appeals;

      ii. $15,000 for filing or responding to a petition for review in the Texas Supreme Court;

      iii. $15,000 for filing or responding to a brief on the merits in the Texas Supreme Court;

      iv. $10,000 for preparing and presenting oral argument to the Texas Supreme Court;

      v. $5,000 for filing or responding to a motion for rehearing in the Texas Supreme Court.

   d. Plaintiff shall recover $350,000, and only $350,000, for all attorneys' fees and costs incurred prior to the entry of a final judgment, subject to subparagraph 2.e., below.

   e. The stipulation in subparagraph 2.d., above, shall not apply if, as a result of delay caused by any Defendant, the Court fails to hear the parties' cross-motions for summary judgment on pre-judgment interest on or about **April 9, 2014**. *See* "**Briefing Schedule**," subparagraph 4.b., below. For example, delays caused by Plaintiff, the Court's calendar, or otherwise not caused by a Defendant **shall not affect** the stipulation in subparagraph 2.d., above.

3. **Postjudgment Interest**: The parties stipulate to postjudgment interest as provided in chapter 304 of the Texas Finance Code.

4. **Prejudgment Interest**: The parties **do not** stipulate to the amount or availability of prejudgment interest. The issue will be submitted to the Court by cross-motions for summary judgment as further described in this paragraph.

   a. **Stipulations**: For purposes of the cross-motions for summary judgment on the issue of prejudgment interest, and for no other purposes, the parties stipulate to the following facts:

      i. Written notice of Plaintiff's claims was received on March 19, 2009 for purposes of calculating prejudgment interest.

    ii. Plaintiff incurred its damages on the dates and in the amounts specified in the spreadsheet attached hereto as Exhibit 1.

    iii. If the Court concludes that prejudgment interest is available (an issue to which the parties **do not** stipulate), prejudgment interest shall be allocated exclusively in accordance with the allocations specified in "**Damages**," paragraph 1, above. The party or parties responsible for any damages shall also be responsible for the prejudgment interest, if any, associated therewith.

b. **Briefing Schedule**: The briefing schedule for the cross-motions for summary judgment on the issue of prejudgment interest shall be as follows:

    i. The parties shall serve their initial motions for summary judgment on prejudgment interest by email on or before **March 28, 2014**.

    ii. Plaintiff shall serve its motion to correct clerical error *nunc pro tunc* by email on or before **March 28, 2014**.

    iii. The parties shall serve any responses to the motions for summary judgment and to Plaintiff's motion to correct clerical error *nunc pro tunc* by email on or before **April 4, 2014**.

    iv. The parties shall serve any replies to the motions for summary judgment and to any response to Plaintiff's motion to correct clerical error *nunc pro tunc* by email not later than noon on **April 8, 2014**.

    v. Plaintiff's motion to correct clerical error *nunc pro tunc* and the cross-motions for summary judgment will be heard on **April 9, 2014**, or as shortly thereafter as the Court's calendar will accommodate.

5. **Preservation of issues**: Nothing contained herein, and nothing in the judgment(s) based on this agreement, is intended or should be interpreted as a waiver of the Defendants' right to appeal the *Order on Motions for Summary Judgment* (signed October 22, 2013). Absent an order or judgment establishing liability, these stipulations shall not provide independent grounds for a judgment. Through this Rule 11 agreement, Defendants do not concede liability on any of Magnum's claims or waive any objections to an award of prejudgment interest.

6. **Amended pleadings**: The parties may amend their pleadings on or before **March 28, 2014**.

7. The current April 9, 2014 trial date is continued.

Pursuant to Rule 11 of the Texas Rules of Civil Procedure, please sign in the space provided below and return a signed copy to me for filing with the court.

Sincerely,

James G. Munisteri

**AGREED TO:**

James T. Clancy,
Attorney for Plaintiff

GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 3400, Houston, Texas 77002-5011  ■  713.276.5500 Phone  ■  713.276.5555 Fax

Austin  ■  Dallas  ■  Houston  ■  Mexico City

Gardere01 - 6432040v.2

EXHIBIT 1 TO RULE 11

| Production Month | Zalman 3 Damages | Zalman 4 Damages | Combined Zalman 3 and 4 Damages |
|---|---|---|---|
| May-01 | $266.47 | $0.00 | $266.47 |
| June-01 | $1,244.81 | $0.00 | $1,244.81 |
| July-01 | $970.40 | $0.00 | $970.40 |
| August-01 | $857.92 | $0.00 | $857.92 |
| September-01 | $574.53 | $0.00 | $574.53 |
| October-01 | $433.99 | $0.00 | $433.99 |
| November-01 | $646.25 | $0.00 | $646.25 |
| December-01 | $471.89 | $0.00 | $471.89 |
| January-02 | $11.11 | $0.00 | $11.11 |
| February-02 | $264.04 | $0.00 | $264.04 |
| March-02 | $361.67 | $0.00 | $361.67 |
| April-02 | $429.03 | $0.00 | $429.03 |
| May-02 | $393.72 | $0.00 | $393.72 |
| June-02 | $298.13 | $0.00 | $298.13 |
| July-02 | $278.62 | $0.00 | $278.62 |
| August-02 | $239.54 | $0.00 | $239.54 |
| September-02 | $226.89 | $0.00 | $226.89 |
| October-02 | $205.22 | $0.00 | $205.22 |
| November-02 | $143.73 | $0.00 | $143.73 |
| December-02 | $128.16 | $0.00 | $128.16 |
| January-03 | $38.09 | $0.00 | $38.09 |
| February-03 | $12.73 | $0.00 | $12.73 |
| March-03 | $1.07 | $0.00 | $1.07 |
| April-03 | $11.81 | $0.00 | $11.81 |
| May-03 | $2.37 | $0.00 | $2.37 |
| June-03 | $2.01 | $0.00 | $2.01 |
| July-03 | $0.00 | $0.00 | $0.00 |
| August-03 | $42.55 | $0.00 | $42.55 |
| September-03 | $423.52 | $0.00 | $423.52 |
| October-03 | $547.66 | $0.00 | $547.66 |
| November-03 | $520.45 | $0.00 | $520.45 |
| December-03 | $537.07 | $0.00 | $537.07 |
| January-04 | $722.92 | $0.00 | $722.92 |
| February-04 | $516.46 | $0.00 | $516.46 |
| March-04 | $585.07 | $0.00 | $585.07 |
| April-04 | $513.15 | $0.00 | $513.15 |
| May-04 | $635.91 | -$405.87 | $230.04 |
| June-04 | $11,491.80 | -$1,161.21 | $10,330.59 |
| July-04 | $10,340.82 | -$812.83 | $9,527.99 |
| August-04 | $10,135.98 | -$481.06 | $9,654.92 |
| September-04 | $6,741.94 | -$258.47 | $6,483.47 |
| October-04 | $8,401.15 | -$241.12 | $8,160.03 |
| November-04 | $9,353.93 | -$246.87 | $9,107.06 |
| December-04 | $7,954.45 | -$230.15 | $7,724.30 |
| January-05 | $6,858.19 | -$171.58 | $6,686.61 |
| February-05 | $5,781.21 | -$148.38 | $5,632.83 |
| March-05 | $5,825.91 | -$155.78 | $5,670.13 |
| April-05 | $5,585.81 | -$148.13 | $5,437.68 |
| May-05 | $4,591.88 | -$134.03 | $4,457.85 |
| June-05 | $3,429.50 | -$108.04 | $3,321.46 |
| July-05 | $3,162.48 | -$115.14 | $3,047.34 |
| August-05 | $4,640.62 | -$107.56 | $4,533.06 |
| September-05 | | -$131.99 | -$131.99 |
| October-05 | | -$171.67 | -$171.67 |
| November-05 | | -$119.22 | -$119.22 |
| December-05 | | -$69.70 | -$69.70 |
| January-06 | $1,063.44 | -$86.42 | $977.02 |
| February-06 | $1,205.55 | -$67.16 | $1,138.39 |
| March-06 | -$14,501.83 | -$64.85 | -$14,566.68 |
| April-06 | -$1,078.24 | -$58.42 | -$1,136.66 |
| May-06 | -$381.40 | -$60.63 | -$442.03 |
| June-06 | -$792.47 | -$50.13 | -$842.60 |
| July-06 | -$249.54 | -$46.12 | -$295.66 |
| August-06 | -$724.33 | -$52.71 | -$777.04 |

EXHIBIT 1 TO RULE 11

| | | | |
|---|---|---|---|
| September-06 | -$6,173.04 | -$46.95 | -$6,219.99 |
| October-06 | -$416.70 | -$32.93 | -$449.63 |
| November-06 | $44,388.68 | -$46.01 | $44,342.67 |
| December-06 | $237,607.03 | -$51.02 | $237,556.01 |
| January-07 | $168,465.55 | -$38.69 | $168,426.86 |
| February-07 | $177,310.64 | -$45.70 | $177,264.94 |
| March-07 | $188,541.49 | -$51.31 | $188,490.18 |
| April-07 | $131,798.13 | $236.49 | $132,034.62 |
| May-07 | $139,624.52 | $250.17 | $139,874.69 |
| June-07 | $172,911.83 | $217.44 | $173,129.27 |
| July-07 | $151,495.03 | $185.19 | $151,680.22 |
| August-07 | $119,557.26 | $349.89 | $119,907.15 |
| September-07 | $129,308.49 | $310.56 | $129,619.05 |
| October-07 | $140,849.02 | $141.32 | $140,990.34 |
| November-07 | $146,418.21 | $25.02 | $146,443.23 |
| December-07 | $115,730.37 | $34.87 | $115,765.24 |
| January-08 | $144,904.76 | $5.06 | $144,909.82 |
| February-08 | $152,405.07 | $0.00 | $152,405.07 |
| March-08 | $187,559.44 | $0.00 | $187,559.44 |
| April-08 | $164,780.67 | $0.00 | $164,780.67 |
| May-08 | $175,229.82 | $602.13 | $175,831.95 |
| June-08 | $172,020.18 | $1,016.66 | $173,036.84 |
| July-08 | $172,557.48 | $870.68 | $173,428.16 |
| August-08 | $121,842.50 | $501.54 | $122,344.04 |
| September-08 | $85,126.83 | $358.24 | $85,485.07 |
| October-08 | $83,931.07 | $634.72 | $84,565.79 |
| November-08 | $61,053.14 | $227.67 | $61,280.81 |
| December-08 | $29,573.62 | $220.65 | $29,794.27 |
| January-09 | $43,469.87 | $171.11 | $43,640.98 |
| February-09 | $33,094.78 | $111.27 | $33,206.05 |
| March-09 | $29,058.80 | $122.68 | $29,181.48 |
| April-09 | $33,601.59 | $114.93 | $33,716.52 |
| May-09 | $24,240.60 | $83.45 | $24,324.05 |
| June-09 | $28,503.45 | $81.67 | $28,585.12 |
| July-09 | $27,716.19 | $83.95 | $27,800.14 |
| August-09 | $10,074.51 | $68.96 | $10,143.47 |
| September-09 | $18,237.36 | $58.77 | $18,296.13 |
| October-09 | $37,497.37 | $75.97 | $37,573.34 |
| November-09 | $34,397.98 | $83.00 | $34,480.98 |
| December-09 | $20,770.41 | $86.04 | $20,856.45 |
| January-10 | $36,579.38 | $105.97 | $36,685.35 |
| February-10 | $33,182.83 | $90.78 | $33,273.61 |
| March-10 | $26,805.91 | $84.43 | $26,890.34 |
| April-10 | $22,163.85 | $70.94 | $22,234.79 |
| May-10 | $27,791.90 | $54.27 | $27,846.17 |
| June-10 | $20,877.36 | $83.38 | $20,960.74 |
| July-10 | $29,047.34 | $89.68 | $29,137.02 |
| August-10 | $23,763.40 | $77.86 | $23,841.26 |
| September-10 | $19,315.97 | $97.02 | $19,412.99 |
| October-10 | $15,010.80 | $96.13 | $15,106.93 |
| November-10 | $6,455.63 | $68.55 | $6,524.18 |
| December-10 | $4,344.02 | $81.87 | $4,425.89 |
| January-11 | $15,089.26 | $86.11 | $15,175.37 |
| February-11 | $17,652.78 | $61.73 | $17,714.51 |
| March-11 | $21,553.77 | $82.90 | $21,636.67 |
| April-11 | $20,330.05 | $83.48 | $20,413.53 |
| May-11 | $15,333.26 | $73.73 | $15,406.99 |
| June-11 | $12,798.17 | $69.12 | $12,867.29 |
| July-11 | $17,221.93 | $64.77 | $17,286.70 |
| August-11 | $19,518.12 | $60.31 | $19,578.43 |
| September-11 | $13,662.37 | $46.37 | $13,708.74 |
| October-11 | $13,958.46 | $46.91 | $14,005.37 |
| November-11 | $12,749.67 | $41.78 | $12,791.45 |
| December-11 | $10,928.93 | $38.21 | $10,967.14 |
| January-12 | $10,057.01 | $32.93 | $10,089.94 |
| February-12 | $12,024.65 | $31.03 | $12,055.68 |
| March-12 | $7,127.87 | $29.06 | $7,156.93 |
| April-12 | $11,600.85 | $24.57 | $11,625.42 |
| May-12 | $12,630.15 | $28.86 | $12,659.01 |
| June-12 | $89,384.42 | $21.31 | $89,405.73 |

## EXHIBIT 1 TO RULE 11

| | | | |
|---|---|---|---|
| July-12 | -$6,030.18 | $37.00 | -$5,993.18 |
| August-12 | $13,043.77 | $37.69 | $13,081.46 |
| September-12 | $8,407.86 | $12.16 | $8,420.02 |
| October-12 | $11,910.70 | $0.88 | $11,911.58 |
| November-12 | $4,895.64 | $0.03 | $4,895.67 |
| December-12 | $8,659.01 | $0.25 | $8,659.26 |
| January-13 | $12,790.76 | $0.02 | $12,790.78 |
| February-13 | $7,472.67 | $0.00 | $7,472.67 |
| March-13 | $13,384.40 | $0.05 | $13,384.45 |
| April-13 | $8,608.27 | $0.46 | $8,608.73 |
| May-13 | $8,846.01 | $0.52 | $8,846.53 |
| June-13 | $8,998.68 | $0.38 | $8,999.06 |
| July-13 | $5,124.62 | $0.06 | $5,124.68 |
| August-13 | -$2,352.31 | $0.00 | -$2,352.31 |
| September-13 | -$1,606.26 | | -$1,606.26 |
| October-13 | $0.00 | | |
| | | | $4,755,699.37 |

**Appendix C**

Order Granting Plaintiff's Motion to Correct Clerical Error
Nunc Pro Tunc

(Apr. 25, 2014)

(Supp. CR 854-55)

| | | |
|---|---|---|
| MAGNUM PRODUCING L.P., | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| vs. | § | |
| | § | LAVACA COUNTY, TEXAS |
| | § | |
| COPANO FIELD SERVICES/CENTRAL | § | |
| GULF COAST L.P., et al., | § | 25th JUDICIAL DISTRICT |

## ORDER GRANTING PLAINTIFF'S MOTION TO CORRECT CLERICAL ERROR NUNC PRO TUNC UNDER RULE OF CIVIL PROCEDURE 316 AND CORRECTED ORDER ON MOTIONS FOR SUMMARY JUDGMENT

On this day, came on for consideration in the above-entitled and numbered cause Plaintiff's Motion to Correct Clerical Error Nunc Pro Tunc Under Rule of Civil Procedure 316 (the "Motion to Correct"). The court considered the entire summary judgment record before the Court as of October 22, 2013, in addition to: (1) the Motion to Correct, together with any exhibits attached thereto; (2) Defendants' response and all attachments and exhibits thereto; (3) Magnum's reply to Defendants' response; and (4) argument of counsel, and determined that:

(1)     the Court's prior Order on Motions for Summary Judgment entered October 22, 2013 (the "Liability Judgment") contains a clerical error that prevents the Liability Judgment from reflecting the true judgment of the Court on the matters addressed in the Liability Judgment;

(2)     such clerical error must be corrected to reflect the true judgment of the Court on the matters addressed in the Liability Judgment; and

(3)     Plaintiff's Motion to Correct should be GRANTED.

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Court's Liability Judgment is corrected nunc pro tunc by replacing both instances of the following language on page 3 of the Liability Judgment:

5-5 FILED A.D., 20/4
at /0:54 o'clock A M
Sherry T. Hanko, Clerk
DISTRICT COURT LAVACA COUNTY, TX
By_____ Deputy

**"...depths between 12,075 feet and 12,265 feet, inclusive..."**

with the following language:

**"...the stratigraphic equivalent of that certain interval as seen between the electric log depths of 12,075 feet and 12,265 feet in the Bridge-Mitchell E-5 Well located in the Sarah Wilmans Survey A-492, Lavaca County, Texas and as seen at the log depths in the Migl-Quinn No. 2 well (log depth 10,800' – 10,920'), the Migl-Quinn No. 2-A well (log depth 10,800' – 10,920'), and the Migl-Quinn No. 3-A well (log depth 11,030' – 11,162') ..."**

Signed this _____ 25th _____ day of ___ April ___, 2014.

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

_____
James T. Clancy
Counsel for Magnum Producing LP

APPROVED AS TO FORM:

_____
James Munisteri
Counsel for Defendants

# Appendix D

Supplemental Summary Judgment Order
(Oct. 22, 2014)

(CR 3328)

No. 10-11-21591-CV

| MAGNUM PRODUCING L.P., | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| vs. | § | LAVACA COUNTY, TEXAS |
| | § | |
| COPANO FIELD SERVICES/CENTRAL | § | |
| GULF COAST L.P., et al., | § | 25th JUDICIAL DISTRICT |

## SUPPLEMENTAL SUMMARY JUDGMENT ORDER

This court rules as follows on the motions set for the below:

1.    *Plaintiff's Traditional Motion for Summary Judgment on Entitlement to and Amount of Prejudgment Interest* is denied; *Defendants' Traditional Motion for Summary Judgment Regarding Prejudgment Interest* is granted.

2.    *Defendants' Motion to Supplement Summary Judgment Record and Reconsider Summary Judgment Ruling* is denied.

3.    The objections in paragraphs 22 and 23 of *Plaintiff's Reply to Defendants' Response to Plaintiff's Motion on Entitlement to and Amount of Prejudgment Interest* are overruled, and the objection in paragraph 24 is sustained only as to the Baker affidavit.

4.    Defendants' *Motion to Reconsider Exclusion of Baker and Grady Affidavits* (Aug. 25, 2014) is granted in part: the affidavit of Edward Joseph Grady is admitted as evidence for, and was considered in the court's ruling on, the summary judgment motions regarding prejudgment interest. Otherwise, the motion is denied.

Signed this ____27th____ day of ____October____ 2014.

_____
JUDGE PRESIDING

**FILED**
_10-27_ A.D., 20 _14_
at_9.23_ o'clock_A_M
Sherry T. Henke, Clerk
DISTRICT COURT LAVACA COUNTY, TX
By_____Deputy

# Appendix E

Final Judgment
(Nov. 24, 2014)

(CR 3345-56)

| MAGNUM PRODUCING L.P., | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| | § | |
| vs. | § | LAVACA COUNTY, TEXAS |
| | § | |
| COPANO FIELD SERVICES/CENTRAL | § | |
| GULF COAST L.P., et al., | § | 25th JUDICIAL DISTRICT |

## FINAL JUDGMENT

This is the final judgment between Plaintiff Magnum Producing, L.P. ("Magnum"), and Defendants Crimson Exploration, Inc.; Crimson Exploration Operating, Inc., successor by merger to Southern G. Holdings, LLC; EXCO Resources, Inc.; Anadarko Petroleum Corporation; Anadarko E&P Company, LP; Kerr-McGee Oil & Gas Onshore, LP; Westport Oil & Gas Company, LP; and Aubris Resources, L.P. f/k/a United Resources, LP (collectively, the "Operators"), Copano Field Services/Central Gulf Coast, L.P. ("Copano"), and Sunoco Partners Marketing & Terminals, L.P. ("Sunoco").

The parties brought cross-motions for partial summary judgment on liability, which the Court heard on January 25, 2013, determined by order dated October 22, 2013, and corrected nunc pro tunc by order dated April 25, 2014 (the "First Summary Judgment"). On April 9, 2014, the Court rendered a Partial Judgment on damages, attorney's fees, and post-judgment interest (the "Damages Judgment"), reflecting the parties' stipulation by Rule 11 agreement (which Rule 11 agreement expressly preserved the right to appeal the Court's summary determination of liability). Also on April 9, the Court heard the parties' cross-motions for partial summary judgment addressed to the availability of prejudgment interest, and the Court determined that such interest was unavailable. At the same time, certain defendants moved the Court for leave to

11-24 **FILED** 14
A.D., 20
at 10:34 o'clock A M
Sherry T. Hanke, Clerk
DISTRICT COURT LAVACA COUNTY, TX
By_____ Deputy — Page 3345

supplement the First Summary Judgment record and to reconsider the October 22, 2013 summary judgment ruling.

## FIRST MOTIONS FOR SUMMARY JUDGMENT

Magnum moved for summary judgment against the Operators (the "First Magnum Motion for Summary Judgment"), the Operators moved for summary judgment against Magnum (the "First Operators' Motion for Summary Judgment"), Copano moved for summary judgment against Magnum (the "Copano Motion"), and Sunoco moved for summary judgment against Magnum (the "Sunoco Motion"). The Court heard these motions on January 25, 2013, and considered (1) the [First] Magnum Motion [for Summary Judgment]; (2) the [First] Operators' Motion [for Summary Judgment]; (3) the Copano Motion; (4) the Sunoco Motion; (5) any and all responses and replies in support of or in opposition to the [First] Magnum Motion [for Summary Judgment], [First] Operators' Motion [for Summary Judgment], Copano Motion, and Sunoco Motion; (6) Operators' Supplemental Motion for Summary Judgment and Motion for Leave to File Supplemental Motion for Summary Judgment and Late Summary Judgment Evidence; (7) Plaintiff's Response to Operators' Supplemental Motion for Summary Judgment and Motion for Leave to File Supplemental Motion for Summary Judgment and Late Summary Judgment Evidence; (8) all summary judgment evidence, including late-filed evidence made the subject of Operators' motion for leave and Plaintiff's response to Operators' motion for leave; ([9]) the pleadings on file at the time of the hearing; and ([10]) argument of counsel.

The Court entered an order on October 22, 2013, which it modified nunc pro tunc by order dated April 25, 2014. As corrected the Court rendered a declaratory judgment by which it declared, adjudged and decreed that:

2

[E]ven] if that certain oil, gas and mineral lease recorded at Volume 90, Page 270, Oil and Gas Records of Lavaca County, Texas (the "Simpson Lease") was terminated, and regardless of when it was terminated, the January 30, 2001 Master Settlement Agreement and May 30, 2001 Supplemental Master Settlement Agreement each by and between Magnum Producing and Operating Company n/k/a Magnum Producing, LP and United Oil & Minerals Limited Partnership n/k/a Aubris Resources, LP, et al. (the "Settlement Agreements"), the January 30, 2001 Joint Operating Agreement by and between Magnum Producing and Operating Company n/k/a Magnum Producing LP and United Oil & Minerals Limited Partnership n/k/a Aubris Resources, LP, et al. (the "JOA") and the October 8, 2003 Letter Agreement by and between Magnum Producing and Operating Company n/k/a Magnum Producing, LP and United Resources LP n/k/a Aubris Resources, LP (the "Letter Agreement"), all of which are binding on the Operators, give Magnum Producing, LP ("Magnum") the right to participate in any renewal, extension, or top lease taken by any of the Operators or their successors or assigns, covering lands that were the subject of the Simpson Lease, and which were taken by or assigned to the Operators before October 8, 2003, or which became effective within one year of the expiration date of the immediately preceding lease covering lands that were the subject of the Simpson Lease, including but not limited to the oil, gas and mineral leases described in Exhibit A attached to this Final Judgment.

3

Magnum's interests in and under those certain oil, gas and mineral leases described in the Exhibit A attached to this Final Judgment are identical to those interests Magnum owned in and under the Simpson Lease, as those interests are described in the Settlement Agreements. Specifically, before taking into consideration the farmout to the Operators effected by the Settlement Agreements, Magnum's interests include:

a. A 31.5% leasehold interest as to the "Simpson 310 Acre Tract" (all depths), the "Simpson 320 Acre Tract" (all depths) and the western forty (40) acres of the "Simpson Gap Tract" (all depths) as those lands are defined in Exhibit B to this Final Judgment.

b. A 50% leasehold interest as to the "Simpson Gap Tract", as such land is defined in Exhibit B to this Final Judgment, save and except the westerly forty (40) acres of the "Simpson Gap Tract";

By virtue of the farmout to the Operators effected by the Settlement Agreements, JOA and Letter Agreement, Magnum owns and is entitled to leasehold interests in the leases described in Exhibit A, together with interests in production proceeds from wells covered by the leases described in Exhibit A to this Final Judgment (or any extension or renewal of the leases described in Exhibit A to this Final Judgment which are obtained within one (1) year of the expiration of the leases described in Exhibit A) equal to:

1. A 31.5% leasehold estate and working interest in production from the stratigraphic equivalent of that certain interval as seen between the electric log depths of 12,075 feet and 12,265 feet in the Bridge-Mitchell E-5 Well located in the Sarah Wilmans Survey A-492, Lavaca County, Texas and as seen at the log depths in the Migl-Quinn No. 2 well (log depth 10,800'-10,920'), the Migl-Quinn No. 2-A well (log depth 10,800'-10,920'), and the Migl-Quinn No. 3-A well (log depth 11,030'-11,162') (the "Magnum Reserved Zone"), under the

4

applicable lease(s) described in Exhibit A to this Final Judgment, as to wells located on the "Simpson 310 Tract," "Simpson 320 Tract," and the western forty (40) acres of the "Simpson Gap Tract;"

2. A 50% leasehold estate and working interest in production from the stratigraphic equivalent of that certain interval as seen between the electric log depths of 12,075 feet and 12,265 feet in the Bridge-Mitchell E-5 Well located in the Sarah Wilmans Survey A-492, Lavaca County, Texas and as seen at the log depths in the Migl-Quinn No. 2 well (log depth 10,800'-10,920'), the Migl-Quinn No. 2-A well (log depth 10,800'-10,920'), and the Migl-Quinn No. 3-A well (log depth 11,030'-11,162') (the "Magnum Reserved Zone"), under the applicable lease(s) described in Exhibit A to this Final Judgment, as to wells located on the "Simpson Gap Tract," save and except the western forty (40) acres of the "Simpson Gap Tract;"

3. A 1% of 31.5% overriding royalty interest in production before "payout" (as "payout" is defined in the Settlement Agreements), from depths outside the Magnum Reserved Zone under the applicable lease(s) described in Exhibit A to this Final Judgment, as to wells located on the "Simpson 310 Tract," "Simpson 320 Tract," and the western forty (40) acres of the "Simpson Gap Tract;"

4. A 1% of 50% overriding royalty interest in production before "payout" (as "payout" is defined in the Settlement Agreements), from depths outside the Magnum Reserved Zone under the applicable lease(s) described in Exhibit A to this Final Judgment, as to wells located on the "Simpson Gap Tract," less and except the western forty (40) acres of the "Simpson Gap Tract;"

5. Upon "payout" (as "payout" is defined in the Settlement Agreements) of and election to participate in any wells located on the "Simpson 310 Tract," "Simpson 320 Tract," and the western forty (40) acres of the "Simpson Gap Tract," a 26.25% of 31.5% leasehold estate and working interest in after-payout production from all depths outside the Magnum Reserved Zone under the oil, gas and mineral leases described in Exhibit A to this Final Judgment; and

6. Upon "payout" (as "payout" is defined in the Settlement Agreements) of and election to participate in any wells located on the "Simpson Gap Tract," save and except the western forty (40) acres of the "Simpson Gap Tract," a 26.25% of 50% leasehold estate and working interest in after-payout production from all depths outside the Magnum Reserved Zone under the oil, gas and mineral leases described in Exhibit A to this Final Judgment.

5

It was further ordered, adjudged and decreed by the First Summary Judgment that Magnum take nothing from Defendants Copano Field Services/Central Gulf Coast, LP and Sunoco Partners Marketing & Terminals, LP.

## DAMAGES, POST-JUDGMENT INTEREST AND ATTORNEYS' FEES
## (THE DAMAGES JUDGMENT)

On March 27, 2014, after the Court rendered the First Summary Judgment, Plaintiff Magnum and the Operators (Defendants Crimson Exploration, Inc.; Crimson Exploration Operating, Inc., successor by merger to Southern G. Holdings, LLC; EXCO Resources, Inc.; Anadarko Petroleum Corporation; Anadarko E&P Company, LP; Kerr-McGee Oil & Gas Onshore, LP; Westport Oil & Gas Company, LP; and Aubris Resources, LP f/k/a United Resources, LP) entered an agreement pursuant to Rule 11, which agreement the parties submitted to the Court. On the basis of its prior First Summary Judgment and the parties' Rule 11 Agreement (which Rule 11 agreement expressly preserved the right to appeal the Court's summary determination of liability), the Court rendered its judgment on damages, postjudgment interest and attorneys' fees as follows:

1. Magnum Producing LP shall recover from Aubris Resources, LP damages in the amount of $10,048.38.

2. Plaintiff shall recover from Anadarko Petroleum Corporation damages in the amount of $361,671.25.

3. Magnum shall recover from Crimson Exploration Operating Inc. damages in the amount of $4,383,979.74 through the date of this Final Judgment.

6

4. Magnum shall take nothing from the defendants not named in the preceding numbered paragraphs. In particular, Magnum shall take nothing from Copano Field Services/Central Gulf Coast LP, Sunoco Partners Marketing & Terminals LP, Crimson Exploration Inc., Southern G. Holdings LLC, Anadarko E&P Company LP, Kerr-McGee Oil & Gas Onshore LP, Westport Oil & Gas Company LP, United Resources LP f/k/a United Oil and Minerals LP, and EXCO Resources, Inc.

5. Magnum shall recover, on all amounts awarded above, postjudgment interest at a rate of 5% per annum from the date a final judgment is signed until paid in full in accordance with Chapter 304, Texas Finance Code.

6. Magnum shall recover attorneys' fees and costs from Aubris Resources LP, Anadarko Petroleum Corporation, and Crimson Exploration Operating Inc., jointly and severally, in the amount of $350,000. This amount shall constitute full and final compensation for any attorneys' fees and costs incurred by Plaintiff prior to final judgment.

7. Magnum shall recover fees and costs from Aubris Resources LP, Anadarko Petroleum Corporation, and Crimson Exploration Operating Inc., jointly and severally, in the following amounts in the event of an appeal:

    a. $75,000 for an appeal to the Thirteenth Court of Appeals;

    b. $15,000 for filing or responding to a petition for review in the Texas Supreme Court;

    c. $15,000 for filing or responding to a brief on the merits in the Texas Supreme Court;

7

d. $10,000 for preparing and presenting oral argument to the Texas Supreme Court;

e. $5,000 for filing or responding to a motion for rehearing in the Texas Supreme Court.

f. Appellate attorneys' fees and costs for the respective stages of appellate proceedings above are conditioned on ~~Defendant's pursuing~~ appellate _ultimate affirmance of_ proceedings at that stage of appellate review and ~~an Appellate courts~~ ~~affirming~~ this final judgment.

## SECOND MOTIONS FOR SUMMARY JUDGMENT ON PREJUDGMENT INTEREST AND TO SUPPLEMENT THE RECORD AND RECONSIDER SUMMARY JUDGMENT RULING

The Plaintiff filed its Motion for Summary Judgment on Entitlement to and Amount of Prejudgment Interest Against Operators Crimson Exploration Operating, Inc., Anadarko Petroleum Corporation and Aubris Resources LP ("Plaintiff's Interest Motion"), and Defendants filed a cross-motion for Summary Judgment Regarding Prejudgment Interest Against Plaintiff ("Defendants' Interest Motion"), and Defendants filed a Motion to Supplement the Summary Judgment Record and Reconsider the Summary Judgment Ruling ("Defendants' Motion to Supplement"). On April 9, 2014, the Court considered these motions.

The Court entered an Order on October 27, 2014. It is therefore, ordered, adjudged, and decreed that:

1. Plaintiff's Traditional Motion for Summary Judgment on Entitlement to and Amount of Prejudgment Interest is denied; Defendants' Traditional Motion for Summary Judgment Regarding Prejudgment Interest is granted; and

8

2. Defendants' Motion to Supplement Summary Judgment Record and Reconsider Summary Judgment Ruling is denied.

3. The objections in paragraphs 22 and 23 of Plaintiff's Reply to Defendants' Response to Plaintiff's Motion on Entitlement to and Amount of Prejudgment Interest are overruled, and the objection in paragraph 24 is sustained only as to the Baker affidavit.

4. Defendants' Motion to Reconsider Exclusion of Baker and Grady Affidavits (Aug. 25, 2014) is granted in part: the affidavit of Edward Joseph Grady is admitted as evidence for, and was considered in the court's ruling on, the summary judgment motions regarding prejudgment interest. Otherwise, the motion is denied.

THIS JUDGMENT DISPOSES OF ALL CLAIMS AND PARTIES, IS FINAL AND IS APPEALABLE.

Signed this the _____ 24th _____ day of _____ November _____, 2014

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

_____
James T. Clancy

9

Counsel for Magnum Producing LP

APPROVED AS TO FORM:

_____
James Munisteri
Counsel for Defendants

10

# EXHIBIT "A"

1. Oil gas and mineral lease entered February 14, 2001 by and between Joe A. Zalman, Jr. and wife, Margaret L. Zalman 2000 Family Limited Partnership, et al. as LESSOR and United Oil & Minerals Limited Partnership as LESSEE, covering 699.595 acres more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 226, Page 516 of the Official Property Records of Lavaca County, Texas.

2. Oil, gas and mineral lease entered September 10, 2003 by and between Joe A. Zalman Jr. and Margaret L. Zalman 2000 Family Limited Partnership, et al. as LESSOR and United Resources, LP as LESSEE, covering 699.595 acres, more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 295, Page 848 of the Official Property Records of Lavaca County, Texas, and as amended on October 15, 2003 to include two additional tracts comprising 310 acres, more or less and 108.865 acres, more or less, as reflected by the recorded amendment at Volume 297, Page 690 of the Official Property Records of Lavaca County, Texas.

3. Oil, gas and mineral lease entered August 17, 2006 by and between Joe A. Zalman, Jr. and Margaret L. Zalman 2000 Family Limited Partnership, et al. as LESSOR and Kerr-McGee Oil & Gas Onshore, LP, covering 1438.46 acres, more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 392, Page 847 of the Official Property Records of Lavaca County, Texas.

4. Oil, gas and mineral lease entered August 11, 2008 by and between Joe A. Zalman, Jr. and Margaret L. Zalman 2000 Family Limited Partnership, et al., covering 1128.46 acres, more or less in Lavaca County, Texas, a memorandum of which is recorded at Volume 465, Page 19 of the Official Property Records of Lavaca County, Texas.

11

# EXHIBIT "B"

1. **"Simpson 310 Acre Tract"**: 310 acres, more or less, out of the Amando De La Croix Survey, A-112, Lavaca County, Texas; being the same lands described in that certain "Partial Assignment of Oil and Gas Lease" dated May 19, 1997 by and between JWR Exploration, Inc., et al., as Assignor and United Oil & Minerals, Inc., as Assignee, recorded in Volume 126 at Page 307 of the Official Records of Lavaca County, Texas.

2. **"Simpson 320 Acre Tract"**: 320 acres, more or less, out of the Amando De La Croix Survey, A-112, Lavaca County, Texas; being that certain 320 acres lying immediately east of and contiguous to the above described 310 acre tract with the western boundary line of said 320 acres being common with the eastern boundary line of said 310 acre tract; the northern and southern boundaries of said 320 acres being common with the northern and southern boundaries of the said Amando De La Croix Survey, respectively; and, the eastern boundary of said 320 acres being parallel to and a sufficient distance from its said western boundary to comprise 320 acres more or less.

3. **"Simpson Gap Tract"**: lands lying within the Amando De La Croix Survey, A-112, the northern boundary of which is the northern boundary line of said survey, the southern boundary of which his the southern boundary line of said survey, the western boundary of which is the eastern boundary of the "Simpson 320 Acre Tract" being more particularly described in that certain Supplemental Master Settlement Agreement dated May 30, 2001 by and between Magnum Producing & Operating Company and United Oil & Minerals, LP, et. al. and the eastern boundary of which is the western boundary of the "Simpson 870 Acre Tract" being more particularly described in that certain Supplemental Master Settlement Agreement dated May 30, 2001 by and between Magnum Producing & Operating and United Oil & Minerals, LP, et al.

12

# Appendix F

Master Settlement Agreement Exhibit A (plat)

(CR 838)



# Appendix G

Amanda De La Croix plat

(CR 1226)

PATRICIA MORALES
Deputy

BY: _____
ELIZABETH A KOUBA, COUNTY CLERK
Witness my hand and seal of office on __10-15-12__
copy as same appears of record in my office
Texas, do hereby certify that this is a true and correct
I, ELIZABETH A KOUBA, County Clerk, Lavaca County,



VOL 228 PAGE 791

Page 1226

# Appendix H

## Joint Operating Agreement art. VIII, § B

## (1SCR 111)

If any party secures a renewal of any oil and gas lease subject to this agreement, all other parties shall be notified promptly, and shall have the right for a period of thirty (30) days following receipt of such notice in which to elect to participate in the ownership of the renewal lease, insofar as such lease affects lands within the Contract Area, by paying to the party who acquired it their several proper proportionate shares of the acquisition cost allocated to that part of such lease within the Contract Area, which shall be in proportion to the interests held at that time by the parties in the Contract Area.

. . .

. . . Any renewal lease taken before the expiration of its predecessor lease, or taken or contracted for within six (6) months after the expiration of the existing lease shall be subject to this provision; but any lease taken or contracted for more than six (6) months after the expiration of an existing lease shall not be deemed a renewal lease and shall not be subject to the provisions of this agreement.

The provisions in this Article shall also be applicable to extensions of oil and gas leases.

# Appendix I

Letter of Intent

Oct. 8, 2013

(CR 1295-96)



# MAGNUM

### MAGNUM PRODUCING & OPERATING COMPANY _____

600 N. SHORELINE · SUITE 322
CORPUS CHRISTI, TEXAS 78471
361/882-3858
FAX 361/884-9355

October 8, 2003

United Resources, L.P.
1001 Westbank Drive
Austin, Texas 78746

ATTN: Eric Sigsbey

Re:   Proposal for a Deep Prospect on Zalman Acreage
Speaks, S. W. Field
Lavaca County, Texas

Gentlemen:

     This letter represents a counter proposal to the proposal reflected in your letter dated October 3, 2003 addressed to Magnum Producing & Operating Company ("Magnum"). Your letter addressed your acquisition of two new leases and your proposed acquisition of the third lease, which leases are called the "Top Leases". The Top Leases cover Tracts I, II, III, IV, V and VI of the attached plat. We agree to farmout to you the Simpson Lease and the Top Leases as to the depths and horizons that were to be assigned to Magnum under Paragraphs 9J. and K. of the Master Settlement Agreement, (less the zones above the stratigraphic equivalent of 14,990' as to the Simpson 310 Acre Tract) SAVE AND EXCEPT the "Magnum Reserved Zone" as defined in the Master Settlement Agreement subject to satisfaction of the following[1], to-wit:

1)   You agree to assign to Magnum as to the Top Leases, the following:
              *Convertable to a*
    an ORRI of 1% ~~and~~ 26.25% WI (with an NRI equal to a 26.25% proportionate part of the NRI currently available to United Resources, L.P.) after payout on a well-by-well basis, proportionately reduced to (i) Magnum's 31.5% in Tracts V, VI the western 40 acres of Tract IV and (ii) 50% WI in Tract II, III and everything east of the western 40 acres of Tract IV after re-assignment to Magnum as per terms of the Term Assignment of Oil, Gas and Mineral Lease dated effective October 1, 1996 filed in Volume 109, at Page 157 as corrected and amended by and between Magnum Producing & Operating Company and Louis Dreyfus Natural Gas Corp.. Before such re-assignment, Magnum's rights under Tracts I, II and III shall be covered by such Term Assignment. These interests represent Magnum's retained interest under the farmout proposed herein.

2)   You agree that the following described Oil and Gas Leases (called herein the "Zalman Leases"), to-wit:

    a.   Oil and Gas Lease dated February 14, 2001 filed in Volume 226 at Page 516, Official Records, Lavaca County, Texas from Joe A. Zalman et al to United Oil and Minerals, L.P.

    b.   Oil and Gas Lease dated February 14, 2001 filed in Volume 226 at Page 526, Official Records, Lavaca County, Texas from Joe A. Zalman et al to United Oil and Minerals, L.P.

    c.   Any other top leases taken by you or assigned to you prior to this date or which are taken and/or which become effective within one year of release of all or part of the lands covered by the Simpson Lease.

shall each be considered for all purposes (and in particular for the purposes of Paragraph 9B. of the Master Settlement Agreement) as a "renewal(s) and extension(s) obtained within one (1) year of the expiration" of the

_____
[1] All underlined terms herein are defined in the Master Settlement Agreement dated as of January 30, 2001 ("Master Settlement Agreement")

United Resources, L.P.
Letter Agreement Zalman Acreage
SW Speaks Field, Lavaca Co., TX
October 8, 2003
Page 2 of 2

Simpson Lease, so that Magnum shall be entitled to all interests otherwise credited it under the Master Settlement Agreement relative to the Simpson Lease, as to such leases. Further Magnum, as to such leases, shall be entitled to the interests credited to it in Paragraphs 3 and 4 of the Master Settlement Agreement as to the wells scheduled in Exhibits D-1, 2 and E-1, 2. In the event the Zalman Leases are proven to be valid leases (instead of the Simpson Lease) Magnum's ORRI and NRI as to the Zalman Leases shall be calculated based on the interests reflected on item 1 above.

3)      As to any well drilled under this Agreement, Magnum, or its representatives, shall have access to the rig floor, at its sole risk and expense, and shall be entitled to all well data, including logs, at the same time it is available to United Resources, L.P. ("United").

4)      As to any well drilled under this Agreement, if such well is a dryhole and United elects not to complete in any zone previously earned by United, then United will plug off the open hole part of such well, move the rig off, clean the location and assign such well to Magnum to complete in the Magnum Reserved Zone or any other zone(s) not earned by United.

5)      If any well drilled under this Agreement is completed by United, then if such well ceases to produce, then reassignment of such well and associated leasehold shall be covered by a further agreement containing cessation of production clause form in Producers 88 (7/69) Paid-Up Lease Form.

6)      No pooling shall be allowed for wells drilled on Tracts IV, V, and VI unless they are pooled with each other.

United Resources, L.P. represents that it is vested with sufficient leasehold interest in the Top Leases and the Zalman Leases to perform all of its obligations herein.

The parties agree that this letter agreement is a letter of intent and that the parties shall enter into such further agreements and assignments as are necessary to effectuate the intent expressed herein. It is agreed that the guiding purpose of this agreement is for you to assign to Magnum interests in the Top Leases, so that Magnum can farmout to you the depths covered by the Top Leases (whether under the Simpson Lease or the Top Leases) and to ensure that Magnum shall continue to be vested, as to the Top Leases and the Zalman Leases, each and every interest as otherwise credited to Magnum under the Simpson Lease in the Master Settlement Agreement (subject to increase ORR/NRI as per Paragraph 1 and 2 above) provided however that the obligation of United Resources, L.P., as the successor to United Oil and Minerals Limited Partnership, to assign to Magnum certain deep rights under the Simpson Lease, the Top Leases and/or the Zalman Leases, as the case may be, under Paragraphs 9J, and K of the Master Settlement Agreement shall be extended from June 1, 2001 and January 1, 2002 respectively to January 1, 2005, at which time such obligation shall arise. This agreement shall, in all things, be binding upon the parties hereto and their successors and assigns.

Please indicate your acceptance of this agreement by signing in the space provided below. If you have any questions, please call me at (361) 882-3858, extension 105.

AGREED to and ACCEPTED this                    Very truly yours,
10 day of October, 2003

United Resources, L.P.                          Avinash C. Ahuja
By:                                             President
Its: B. Brad Burton, Attorney in Fact

F:\MAGNUM\VALERIE\Avinash\United Resources ZalmanAcre Ltr Agr Steve version.doc                    10/10/2003

# Appendix J

Zalman well operators chart

(CR 2444)

CAUSE NO. 10-11-21591-CV

MAGNUM PRODUCING, L.P. § IN THE DISTRICT COURT
§
§
vs. § 25TH JUDICIAL DISTRICT
§
COPANO FIELD SERVICES/CENTRAL §
GULF COAST, L.P., ET AL. § LAVACA COUNTY, TEXAS

## APPENDIX 1 TO MAGNUM'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: OWNERS AND OPERATORS OF THE ZALMAN #3 AND #4

1.      The mineral interests on which the gas wells at issue are located have been owned

and operated as depicted below:



*1-7* **FILED**
_____A.D., 20 *13*
at _____ o'clock _____ M
Sherry T. Henke, Clerk
DISTRICT COURT LAVACA COUNTY, TX
By_____ Deputy

# Appendix K

Timeline

| | |
|---|---|
| Dec. 31, 1956 | Simpson lease executed (CR 2671-76). |
| Jan. 1, 1996 | Simpson lease terminated by this date (CR 657-58). |
| Jan. 30, 2001 | MSA (CR 805-985). |
| Feb. 14, 2001 | 2001 Zalman lease (CR 2699-2716). |
| May 21, 2001 | Zalman No. 3 well completed 12,736-12,746′ (CR 2717-19). |
| May 30, 2001 | SMSA [and JOA] (CR 987-1191). |
| Sept. 10, 2003 | 2003 Zalman lease (CR 2737-46). |
| Oct. 3, 2003 | United proposes letter of intent to Magnum (CR 1290-91). |
| Oct. 8, 2003 | LOI executed (CR 1295-97). |
| Dec. 1, 2003 | United sells its interests to Westport (CR 2444). |
| Feb. 20, 2004 | United sends Magnum proposed farmout agreement; Magnum returns it with comments (CR 707-26, 759-62). |
| May 4, 2004 | Zalman No. 4 well completed 14,223-14,432′ (CR 2728-34) |
| May 2004 | Zalman No. 3 well paid out (CR 1323). |
| June 2004 | Westport merges into Kerr-McGee (CR 2444). |
| July 1, 2015 | LOI deadline to assign "deep rights." No assignment of lease rights occurs (CR 1299, 1356-58, 1362, 1461-62). |
| Dec. 7, 2005 | Magnum invited to back in to .04134350 working interest in Zalman No. 3, and elects to participate (CR 1323-25). |
| Feb. 7, 2006 | *Castle* litigation summary judgment rules Simpson lease terminated before January 1, 1996 (CR 657-58). |

| | |
|---|---|
| July 19, 2006 | Magnum elects to participate in the Zalman No. 3 well recompletion in the "R" Sands (from 12,736′ to 12,746′) with .041344 working interest (CR 2001-02). |
| Aug. 17, 2006 | 2006 Zalman lease (CR 2775-86). |
| Sept. 12, 2006 | Kerr-McGee decides to recomplete Zalman No. 3 well in N&O Sands (Magnum Reserved Zone) (CR 2002). |
| Dec. 2, 2006 | Zalman No. 3 well recompleted in N&O Sands (12,108′ - 12,134′) (CR 2735). |
| May 2007 | Crimson acquires Kerr-McGee interests as operator in the Zalman wells and leases (CR 2444). |
| Nov. 16, 2010 | Magnum files this lawsuit (CR 4). |

# Appendix L: glossary of oil and gas law terms

**Farmout agreement:**

A "farmout" is a contract, between working interest owners, in which one owner with no desire itself to pursue drilling operations agrees to assign its working interest, or a part of it, to another owner who agrees to serve as the well operator and do the drilling. The assignor sometimes reserves for itself an overriding royalty interest or production payment. The primary characteristic of the "farmout" is the assignee's obligation to drill a well on the acreage as a prerequisite to completing transfer of its working interest. *See Mengden v. Peninsula Prod. Co.*, 544 S.W.2d 643, 645 n.1 (Tex. 1976); *Young Ref. Co. v. Pennzoil Co.*, 46 S.W.3d 380, 389 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

**Overriding royalty interest:**

An "overriding royalty" interest is a "percentage of the gross production carved from the working interest but, by agreement, not chargeable with any of the expenses of operation." *MacDonald v. Follett*, 142 Tex. 616, 619, 180 S.W.2d 334, 336 (1944).

**Shut-in royalty:**

"A shut-in royalty clause 'provides for a substitute or contractual method of production, which will maintain the lease in force and effect when a gas well is drilled and for which no market exists' . . . The shut-in royalty is considered constructive production and will maintain the lease if its terms are satisfied." *Hydrocarbon Mgmt., Inc. v. Tracker Exp., Inc.*, 861 S.W.2d 427, 432-33 (Tex. App.—Amarillo 1993, no writ).

**Working interest:**

A "working interest" is the operating interest under an oil and gas lease whereby the lessee has the exclusive right to drill and produce the minerals. *See Young Ref. Corp.*, 46 S.W.3d at 389.